1  HOWARD A. KROLL, CA Bar No. 100981
   howard.kroll@cph.com
2  DANIELLE M. CRIONA, CA Bar No. 204074
   danielle.criona@cph.com
3  STEVEN E. LAURIDSEN, CA Bar No. 246364
   steven.lauridsen@cph.com
4  CHRISTIE, PARKER & HALE, LLP
   350 West Colorado Boulevard, Suite 500
5  Post Office Box 7068
   Pasadena, California 91109-7068
6  Telephone: (626) 795-9900
   Facsimile: (626) 577-8800
7
   Attorneys for Plaintiff,
8  TACORI ENTERPRISES

9  ALLEN B. FELAHY, CA Bar  No. 190177
   Felahylaw@justice.com
10 OSCAR RAMIREZ, CA Bar No. 236768
   oscarramirezesq@gmail.com
11 JULIA A. MERCADO, CA Bar No. 242652
   juliaamercado@sbcglobal.net
12 FELAHY & ASSOCIATES
   One World Trade Center, Suite 2350
13 Long Beach, CA  90831
   Telephone:  (562) 499-2121
14 Facsimile:   (562) 499-2124

15 Attorneys for Defendant,
   PINK DIAMOND
16
17              UNITED STATES DISTRICT COURT

18              CENTRAL DISTRICT OF CALIFORNIA

19 TACORI ENTERPRISES,          | Case No. CV07-3939 GAF (RCx)

20         Plaintiff,            | **JOINT STIPULATION**
                                 | **REGARDING PLAINTIFF'S**
21    vs.                        | **MOTION FOR MONETARY AND**
                                 | **PRECLUSION SANCTIONS**
22 PINK DIAMOND,
                                 | **DATE:**   September 17, 2008
23         Defendant.            | **TIME:**   9:30 a.m.
                                 | **CTRM:**   23, 3rd Floor
24
                                 | Hon. Rosalyn M. Chapman
25 AND RELATED COUNTERCLAIM
                                 | **Discovery Cutoff:  Aug. 12, 2008**
26                               | **Pretrial Conference:  Sept. 22, 2008**
                                 | **Trial Date:  Oct. 21, 2008**
27

28

CHRISTIE, PARKER & HALE, LLP

## **TABLE OF CONTENTS**

I.    TACORI'S INTRODUCTORY STATEMENT ............................................. 1

II.   DEFENDANTS' INTRODUCTORY STATEMENT ................................... 4

III.  TACORI'S CONTENTIONS REGARDING DEFENDANTS' VIOLATION OF THE DISCOVERY ORDER .............................................. 6

    A.   Factual History of Tacori's Attempts to Take Beverlly's Deposition .............................................................................................. 6

        1.   First Deposition On April 3, 2008 .................................................. 6

        2.   Second Deposition On May 30, 2008 .............................................. 7

        3.   Tacori's Motion To Compel ............................................................. 7

        4.   Attempted Third Deposition On August 5, 2008 ....................... 8

        5.   The Parties' *Ex Parte* Applications ............................................... 9

        6.   Attempted Deposition On August 8, 2008 ................................... 9

        7.   Subsequent Attempts To Resolve Dispute ................................. 10

    B.   Defendants and Their Counsel Have Violated the Discovery Order ...................................................................................................... 11

        1.   Defendants and Their Counsel Have Violated The Discovery Order by Preventing Tacori from Completing Beverlly's Deposition On Or Before August 8, 2008 ................. 11

        2.   Defendants' Justification for Bringing Their Own Court Reporter and Interpreter Are Baseless ...................................... 13

            a)   Veritext's Actions Were Correct As a Matter of Law .......................................................................................... 14

            b)   Defendants Prior Actions Belie Their Accusations Against Veritext ...................................... 16

IV.  DEFENDANTS' CONTENTIONS THAT IT HAS NOT VIOLATED THIS COURT'S DISCOVERY ORDER. ......................... 17

    A.   Plaintiff is Engaging in Discovery Gamesmanship In An Effort to Gain a Strategic Litigation Advantage and to Cause Beverly to Incur Considerable Expense and Inconvenience in Traveling from Hong Kong to the United States for Deposition .......................................................................................... 17

    B.   Defendant Complied with the Court Order to Attend a Further Deposition, and Plaintiff Refused to Allow the Deposition to

i

|  |  |  |  |
|---|---|---|---|
| 1 |  | | Go Forward...................................................................... 22 |
| 2 |  | C. | In Response to the Incidents of August 5, 2008, Both Parties Filed Ex Parte Applications................................................ 26 |
| 3 4 |  | D. | Plaintiff Refused to Take Beverly's Deposition on August 8, 2008. ................................................................................ 26 |
| 5 6 |  | E. | Plaintiff has Refused to Meet and Confer to Set a Date for Beverly's Third Deposition. ........................................... 28 |
| 7 8 |  | F. | Defendants have Reason in Law and In Fact to Believe that Veritext has Breached its Duties Under the Law and Cannot be Trusted. .................................................................... 37 |
| 9 | V. | | TACORI'S CONTENTIONS REGARDING THE REASONS WHY PRECLUSION SANCTIONS ARE APPROPRIATE ........................ 39 |
| 10 11 |  | A. | Defendants Actions Warrant Preclusion Sanctions Because Tacori Will Not Have Another Opportunity to Take Beverlly's Deposition............................................................... 39 |
| 12 13 |  | B. | Defendants' Actions Are The Type Contemplated As Appropriate For Preclusion Sanctions............................ 41 |
| 14 |  | 1. | Defendants Cannot Profit From Their Violation Of The Discovery Order........................................................... 42 |
| 15 16 |  | 2. | Defendants Can Only Be Deterred By Preclusion Sanctions .................................................................. 42 |
| 17 18 |  | C. | The Preclusion Sanctions Sought Are Moderate, Are Not Tantamount to Dismissal, and Do Not Require a Showing of Willfulness......................................................................... 46 |
| 19 |  | D. | Defendants Have No Justifiable Explanation For Their Failure To Comply With The Discovery Order .................... 47 |
| 20 21 22 23 | VI. | | PRECLUSION SANCTIONS ARE ENTIRELY INAPPROPRIATE IN THIS CASE BECAUSE PLAINTIFF HAS NOT BEEN DEPRIVED OF ANY DISCOVERY BY DEFENDANTS AND DEFENDANT BEVERLY HAS MADE EVERY EFFORT POSSIBLE TO PROVIDE PLAINTIFF WITH A THIRD DEPOSITION OF BEVERLY...................................................... 49 |
| 24 25 |  | A. | Granting Plaintiffs Motion Would be Unjust and Therefore the Court Should Use its Discretion to Not Enter Precluding Sanctions............................................................................. 49 |
| 26 27 |  | B. | Plaintiffs Request for Sanctions Does not Bear A Reasonable Relationship to the Subject of Discovery Because Defendant Beverly has Already Provided the Requested Information................ 49 |
| 28 |  | C. | Defendant's Actions are Not the Type Contemplated as Appropriate For Preclusion Sanctions................................ 50 |

ii

1

     D.    The Preclusion Sanctions Sought are Not Moderate, and are Tantamount to Dismissal Given That the Evidence at Issue is a Key Part of Defendants' Defense. Therefore Such Sanctions Should Fail Since There is No Willful Violation on the Part of Defendant ........................................................................................... 53

VII.   TACORI'S CONTENTIONS REGARDING THE REASONS WHY MONETARY SANCTIONS ARE APPROPRIATE ................................... 55

VIII. DEFENDANTS' CONTENTIONS AS TO WHY MONETARY SANCTIONS ARE INAPPROPRIATE IN THIS SITUATION ................. 55

IX.    TACORI'S CONCLUSION ........................................................................ 56

X.     DEFENDANTS' CONCLUSION ............................................................... 56

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP

1

## TABLE OF AUTHORITIES

2

### Cases

3

4

*Adriana International Corp. v. Thoeren,*
    913 F.2d 1406 (9th Cir. 1990)...................................... 42

5

*Biovail Laboratoriess, Inc. v. Anchen Pharms., Inc.,*
    233 F.R.D. 648 (C.D. Cal. 2006)................................... 39

6

7

*Fair Housing of Marin v. Combs,*
    285 F.3d 899 (9th Cir.), *cert. denied,* 537 U.S. 1018 (2002) ............ 47

8

*Lew v. Kona Hospital,*
    754 F.2d 1420 (9th Cir. 1985) ...................................... 47

9

10

*Navellier v. Sletten,*
    262 F.3d 923 (9th Cir. 2001), *cert. denied sub nom,*
    *McLachlan v. Simon,* 536 U.S. 941 (2002) ................................. 40, 49

11

12

*Reilly v. Natwest Markets Group, Inc.,*
    181 F.3d 253 (2d Cir. 1999), *cert. denied,* 528 U.S. 1119 (2000) ..... 47

13

*Resolution Trust Corp. v. Dabney,*
    73 F.3d 262 (10th Cir. 1995) ...................................... 55

14

15

*Societe Internationale Poure Participations Industrielles
    et Commerciales v. Rogers,*
    357 U.S. 197, 78 S. Ct. 1087 (1958) .................................... 53

16

17

*United States v. Kahaluu Const. Co.,*
    857 F.2d 600 ........................................................ 39

18

*United States v. Sumitomo Marine & Fire Insurance Co.,*
    617 F.2d 1365 (9th Cir. 1980) .................................... 42, 46, 49, 50, 53

19

20

*Von Brimer v. Whirlpool Corp.,*
    536 F.2d 838 (9th Cir. 1976) ...................................... 46

21

### Statutes

22

28 U.S.C. § 1927 .......................................................... 55

23

Fed. R. Civ. P. 30(f)(3) ................................................. 15

24

Fed. R. Civ. P. 37(a) .................................................... 39

25

Fed. R. Civ. P. 37(b)(2).................................................. 3, 39

26

27

28

CHRISTIE, PARKER & HALE, LLP

1    I.    **TACORI'S INTRODUCTORY STATEMENT**

2         Defendants Beverly Jewellery Company Limited ("Beverlly") and Pink

3    Diamond (collectively, "Defendants") have prevented Plaintiff Tacori Enterprises

4    ("Tacori") from completing the Rule 30(b)(6) deposition of Beverlly on or before

5    August 8, 2008.  As such, Defendants and their counsel have violated this Court's

6    Order Granting Plaintiff's Motion to Compel and Plaintiff's Motion for Sanction,

7    entered on July 14, 2008 (the "Discovery Order") and sanctions are appropriate.[1]

8         Specifically, the Court ordered that the Rule 30(b)(6) deposition of

9    Beverlly "shall resume for four (4) hours, ***not later than August 8, 2008***.

10   Defendant shall reimburse plaintiff the costs of the court reporter and Cantonese

11   interpreter used at the resumed deposition, not later than twenty (20) days after

12   completion of the deposition." (Discovery Order, p. 11 at ¶ 1 (Exhibit A to the

13   Declaration of Howard A. Kroll ("Kroll Decl.")) (emphasis added).  The Court

14   further warned that "***[f]ailure to comply with this Order may lead to further***

15   ***sanctions***." (Discovery Order, p. 11 at ¶ 3) (emphasis added).

16        In compliance with the Discovery Order and the Federal Rules of Civil

17   Procedure, and after conferring with counsel for Defendants, Tacori renoticed

18   Beverlly's Rule 30(b)(6) deposition for August 5, 2008. (Kroll Dec. ¶ 5).  Tacori

19   subsequently procured a court reporter and a Cantonese interpreter for the

20   deposition. (Kroll Dec. ¶ 6).  Without any prior notice, Allen Felahy, counsel for

21   Defendants, arrived at the deposition location on August 5 with his own court

22   reporter and interpreter. (Kroll Dec. ¶¶ 7-8).

23        Mr. Felahy, claiming that the Court Order required Defendants to pay for

24   and provide the court reporter and interpreter, refused to permit the deposition to

25   go forward if Tacori used its own court reporter and interpreter. (Kroll Decl. ¶ 9).

26   _____

27   [1] Since the facts and request for relief are the same, Tacori is filing the same joint stipulation in both the *Tacori v. Beverly*, CV06-5170-GAF-(RCx), and the *Tacori*

28   *v. Pink Diamond*, CV07-3939-GAF-(RCx), cases.

CHRISTIE, PARKER & HALE, LLP

1    Mr. Felahy also claimed that Veritext, the court reporting service used by Tacori,

2    was biased and would not accurately transcribe Beverlly's deposition.  (Kroll

3    Decl. ¶ 11).

4        Several attempts to resolve the matter proved ineffective.  Tacori did not

5    complete the Rule 30(b)(6) of Beverlly on August 5 because Mr. Felahy refused

6    to permit the deposition to go forward using Tacori's court reporter and

7    interpreter. (Kroll Decl. ¶¶ 13-16).  Tacori filed its *ex parte* application seeking

8    monetary and precluding sanctions on August 5.  The next day, Defendants filed

9    their *ex parte* application seeking sanctions and to compel the deposition of

10   Beverlly on or before August 8.  (Kroll Decl. ¶ 17).

11       On August 7, 2008, at approximately 2:30 p.m., the Court denied

12   Defendants' *ex parte* application finding that "[t]he clear inference from [the

13   Discovery Order] is that plaintiff selects the court reporter and the Cantonese

14   interpreter -- not defendant." (Order Denying Defendant's *Ex Parte* Application,

15   dated August 7, 2008 (the "August 7 Order"), attached as Exhibit B to the Kroll

16   Decl.).  Furthermore, the Court advised Defendants that the Discovery Order,

17   "*requiring the Rule 30(b)(6) deposition take place no later than August 8, 2008,*

18   *remains in effect.*"  (*Id.*) (emphasis added).

19       When the August 7 Order issued, Tacori immediately procured an

20   interpreter and a court reporter in order to take the deposition of Beverlly on

21   August 8 at 1:30 p.m.  Tacori also immediately contacted Defendants' counsel by

22   telephone and by email to confirm that Beverlly would be available for its

23   deposition at that time.  Despite the representations in Defendants' *ex parte*

24   applications that Beverlly was available on August 8, and despite this Court's

25   Orders mandating that the deposition be taken no later than August 8, Mr. Felahy

26   informed Tacori's counsel that Beverlly was not available for its deposition on

27   August 8.  Tacori subsequently cancelled the court reporter and interpreter.

28   (Kroll Decl. ¶¶ 20-26).

2

CHRISTIE, PARKER & HALE, LLP

1    Defendants and their counsel have violated the Discovery Order, and have

2  prejudiced Tacori, by preventing Tacori from completing the Rule 30(b)(6)

3  deposition of Beverlly on or before August 8, 2008.   (Kroll Decl. ¶¶ 7-26).

4  Tacori therefore requests that this Court issue an order:

5       1.    that Defendants and their counsel reimburse Tacori $1,163.75 for its

6             costs in procuring a court reporter and Cantonese interpreter on

7             August 5, 2008 (Kroll Decl. ¶ 35);

8       2.    that Defendants and their counsel reimburse Tacori $450.00 for the

9             fee incurred by Tacori when it cancelled the Cantonese interpreter

10            for the proposed deposition on August 8, 2008 (Kroll Decl. ¶ 36);

11      3.    that Defendants and their counsel pay Tacori $12,672.50 for its

12            attorneys' fees in preparing for and attending the aborted August 5,

13            2008 deposition, for preparing its *ex parte* application and for

14            preparing this motion (Kroll Decl. ¶ 34; Lauridsen Decl. ¶ 8); and

15      4.    that, pursuant to Rule 37(b)(2)(A)(ii) of the Federal Rules of Civil

16            Procedure, Defendants be precluded from introducing matters into

17            evidence related to Beverlly's design, dates of design, sales, and

18            dates of sales of any ring containing crescents in the side of the

19            shank, that was purportedly designed or sold by Beverlly before

20            2000; or, in the alternative,

21            to compel the 30(b)(6) deposition of Beverlly and (a) Defendants and

22            their counsel shall reimburse Tacori for the costs of the court

23            reporter and the Cantonese interpreter for that deposition, (b) the

24            deposition shall resume for four hours of actual deposition time, and

25            (c) a discovery referee shall be appointed by the Court to attend the

26            resumed deposition and that Defendants and their counsel shall pay

27            for the costs, if any, of that discovery referee.

28

3

## II.   **DEFENDANTS' INTRODUCTORY STATEMENT**

Plaintiff Tacori Enterprises' Motion for Monetary and Preclusion Sanctions is an abuse of discovery procedure since the entire inability to take Beverly Jewellery Company Limited's *third* deposition is due to Tacori's maneuvering and current outright refusal to take the deposition of Beverly Jewellery Company Limited.   This set of tactics by Tacori is further meant to prevent Defendant Beverly Jewellery Company Limited ("Beverlly") and Defendant Pink Diamond ("Pink Diamond") (collectively referred to as "Defendants") from presenting evidence from Beverlly's owner, Ms. Theresa Lee, that exonerates Defendants from trade dress and copyright infringement.

The facts leading up to the present discovery issue between the parties began when, on July 14, 2008, the Court ordered that Beverly make itself available for four (4) hours of deposition no later than August 8, 2008.  (See, "Exhibit A" at page 11, par. 1, attached herein).  Immediately after receiving the Court's order, Defendant's attorney communicated to Plaintiff's attorney his eagerness to comply with the Court's order and have Ms. Lee appear for deposition.  (See, also Declaration of Allen B. Felahy, at par, 3).  Unfortunately, Mr. Kroll immediately refused to cooperate.  On July 15, 2008, Mr. Kroll e-mailed Mr. Felahy and demanded that the deposition take place on August 5 or 6 or starting at 1:30 on August 4.  (See, e-mail string between Plaintiff and Defense counsel, at page 6, sent Tuesday, July 15, 2008 at 2:24 p.m., attached as "Exhibit 1").  Although Defendant offered to make itself available on the 4th of August, Plaintiff withdrew this date and then unilaterally set the deposition for August 5, 2008.   Despite Plaintiff's lack of cooperation, Mr. Felahy made sure he and Defendant Beverly were available on August 5, 2008 for deposition.

Immediately before Beverlly's deposition was to take place, Defendants' counsel became mistrustful of the relationship between Veritext Court Reporter services ("Veritext") and Howard Kroll because Veritext refused to honor its

4

obligations under the California Code of Civil Procedure regarding the production of a deposition transcript (from a closely related matter) based on Veritext's "substantial relationship," with Mr. Kroll. (See, Declaration of Oscar Ramirez, at par. 6; See also, Declaration of Allen Felahy, at par. 17). Because of the questionable conduct of Veritext and the Court's order to pay for court reporting and translating services, Defendant Beverlly, along with a Kusar court reporter, a Continental interpreter, and Defendant's attorneys Allen B. Felahy and Oscar Ramirez, showed up at Mr. Kroll's office on August 5, 2008.

Upon arriving, Mr. Kroll refused to allow either Defendant's court reporter or interpreter to enter the deposition. Mr. Kroll refused to hold the deposition; and despite repeated efforts by Mr. Felahy to resolve the dispute, Mr. Kroll "kicked" Defendants and their counsel out of his offices prior to the commencement of Defendant's deposition. On August 5 and 6, 2008, Plaintiff and Defendant Bevelrly ex parte applications regarding the foregone deposition of August 5, 2008; and the Court ruled that the third deposition of Ms. Lee must take place by August 8, 2008. *Prior to receiving the Court's order on the afternoon of August 7, 2008, Attorney Kroll had repeatedly stated to Attorney Felahy that he and his client would be unavailable for deposition on August 8, 2008. However, at 4:09 p.m. on August 7, 2008, Plaintiff's counsel notified Defense counsel that Plaintiff's counsel was now available and that Plaintiff would take Beverlly's deposition on August 8, 2008, so long as Beverlly confirmed within fifty-one minutes (by 5:00 p.m.)* Since Defendants were unable to confirm the deposition in such a short time period, the deposition did not go forward. (See, e-mail from Plaintiff's Attorney Steven Lauridsen, sent at 4:09 p.m., August 7, 2008, attached as "Exhibit 4", at pages 9- 10).

Defendant's counsel immediately sought to meet and confer on this matter. Defense counsel *repeatedly* stated to Plaintiff's counsel that it would pay for court reporter and interpreter's fees for this deposition, offered Ms. Lee for deposition

5

1   for a multitude of dates and made other various concessions.  However, Plaintiff
2   refused to meet and confer in good faith.  Apparently, Attorney Kroll was not
3   even considering taking the deposition of Ms. Lee; instead he was only concerned
4   with obtaining a court order to preclude Ms. Lee from testifying at trial.  Indeed,
5   despite the fact that Defendants agreed to virtually all of Plaintiff's demands
6   regarding the deposition of Beverlly, Plaintiff persists with this motion.
7   Plaintiff's Motion must fail due to such bad faith conduct.

8   **III.   TACORI'S   CONTENTIONS   REGARDING   DEFENDANTS'**
9   **VIOLATION OF THE DISCOVERY ORDER**

10      **A.   Factual History of Tacori's Attempts to Take Beverlly's**
11      **Deposition**

12           **1.   First Deposition On April 3, 2008**

13           For over four months, Tacori repeatedly has been thwarted in its attempt to
14   complete the Rule 30(b)(6) deposition of Beverlly, a Hong Kong company.  After
15   noticing Beverlly's deposition multiple times,[2] the first Beverlly deposition
16   finally began at 11:02 a.m on April 3, 2008.  However, given the number and
17   extent of breaks requested by Beverlly, only approximately 3½ hours of actual
18   deposition had been taken by 5:00 p.m.  At that time, Beverlly unilaterally left the
19   deposition on the grounds that the deponent "has traveled a very long distance to
20   be here today.  She is jet lagged.  She is tired." (Discovery Order, p. 3 (Exhibit A

---

22   [2]   Although the deposition noticed for April 3, 2008 was the first deposition
23   actually taken of Beverlly, it was the seventh noticed deposition.  Tacori's prior
     attempts were frustrated by Beverlly or Beverlly's counsel claim that the
24   deposition dates were not inconvenient.  In addition, on one occasion, Beverlly's
25   counsel belatedly informed Tacori's counsel in the afternoon before the
     deposition date that Theresa Lee, the Rule 30(b)(6) witness of Beverlly, needed a
26   Cantonese interpreter.  Since Tacori was unable to locate and hire a Cantonese
27   interpreter on such a short notice, the deposition did not go forward as noticed.
     (Kroll Decl., ¶ 2).

28

6

to Kroll Decl.) citing to Beverly Deposition I, pp. 107-108).[3]

### 2. Second Deposition On May 30, 2008

Beverly agreed to continue its deposition to May 30, 2008. This second deposition began at 10:13 a.m. At 11:48 a.m., when approximately 1½ hours of actual deposition had been taken, Beverly again unilaterally concluded the deposition. At that time, Beverly claimed that it had complied with the Federal Rules of Civil Procedure by being available, ready and prepared to answer all of Tacori's questions for a total of 8 hours. (Discovery Order, pp. 4-6 (Exhibit A to Kroll Decl.) citing to Beverly Deposition II, pp. 172-175).[4]

### 3. Tacori's Motion To Compel

Tacori brought a motion to compel the continued deposition of Beverly because only 5 hours of actual deposition had been taken (which did not include breaks). Tacori also requested that it be allowed additional time to take Beverly's deposition given the numerous interruptions by Defendants' counsel, including speaking objections and given the fact that the deposition was being translated. (Kroll Decl. ¶ 3).

On July 14, 2008, the Court granted Tacori's motion to compel and issued the Discovery Order requiring:

    1.    that the deposition of Beverly resume for four additional hours no later than August 8, 2008;

    2.    that Defendants and their counsel reimburse Tacori for its costs of a court reporter and interpreter at the resumed deposition; and

---

[3] The Court further found that "throughout the deposition, defendant's counsel objected to almost each and every question" and that "many of defendant's counsel's objections were 'speaking objections,' giving direction to Ms. Lee. (Discovery Order, pp. 2-3 (Exhibit A to Kroll Decl.)).

[4] Once again, the Court found that "[d]uring the resumed deposition, defendant's counsel again made numerous speaking objections." (Discovery Order, p. 4 (Exhibit A to Kroll Decl.).

7

1    3.    that Beverlly and its counsel pay Tacori's attorneys' fees of $4,825

2        no later than twenty days after the Discovery Order was entered.

3    The Court also warned Defendants that further sanctions would be imposed

4    for their failure to comply with the Discovery Order.  (Discovery Order, p. 11

5    (Exhibit A to Kroll Decl.)).

6        4.    **Attempted Third Deposition On August 5, 2008**

7    After conferring with counsel for Defendants, Tacori renoticed Beverlly's

8    deposition for August 5, 2008.  Tacori subsequently procured a court reporter and

9    a Cantonese interpreter for the deposition.  (Kroll Dec. ¶¶ 5-6).  The morning the

10   deposition was scheduled to take place, however, Allen Felahy, counsel for

11   Defendants, arrived at the deposition location with his own court reporter and

12   interpreter.  Mr. Felahy made no prior indication that he intended to hire or bring

13   to the deposition a court reporter or an interpreter.  (Kroll Dec. ¶¶ 7-8).

14   Mr. Felahy informed Tacori's counsel, Howard Kroll, that he would not

15   permit the deposition to go forward if Tacori used its court reporter and

16   interpreter.  Mr. Felahy claimed that the Court Order required Defendants to pay

17   for and provide the court reporter and interpreter.  Mr. Kroll informed Mr. Felahy

18   that he was incorrect and stated that the Discovery Order required Defendants to

19   *reimburse* Tacori and its counsel for the costs of these services.  (Kroll Decl. ¶¶

20   9-10).  Mr. Felahy then claimed that Veritext, the court reporting service used by

21   Tacori, was biased and would not accurately transcribe Beverlly's deposition.

22   (Kroll Decl. ¶ 11).

23   After further discussion, in an attempt to resolve the matter, Mr. Felahy

24   suggested that the deposition could proceed using Tacori's court reporter and

25   interpreter *only if* Tacori reimbursed Mr. Felahy for Defendants' court reporter

26   and interpreter.  Because such an action would abrogate the Court's Discovery

27   Order and would shift the cost of the deposition to Tacori, Mr. Kroll refused.  Mr.

28   Kroll suggested that the deposition should go forward using Tacori's court

8

1   reporter and interpreter and that, if Defendants wanted Tacori to pay for the cost

2   of Defendants' court reporter and interpreter, they could seek relief from the

3   Court after the deposition was completed.  This offer was rejected.  When Mr.

4   Felahy continued to refuse to go forward with the deposition, Mr. Kroll informed

5   Mr. Felahy that Tacori would seek *ex parte* relief and told Mr. Felahy that he

6   could leave. (Kroll Decl. ¶¶ 13-16).

### 5.   The Parties' *Ex Parte* Applications

8   Tacori filed its *ex parte* applications on August 5 seeking monetary and

9   precluding sanctions or, in the alternative, to compel the deposition of Beverlly.

10  Defendants filed their *ex parte* applications on August 6 seeking sanctions and "to

11  compel Teresa Lee's deposition for a date on or before August 8, 2008."

12  (Defendants' *Ex Parte* Application ("Defendants' Application"), p. 8;

13  Defendants' Opposition to Tacori's *Ex Parte* Application, p. 10).

14  On August 7, the Court issued an Order denying Defendants' *ex parte*

15  application.  The Court found that Tacori, not Beverlly, was entitled to select the

16  court reporter and the Cantonese interpreter.  The Court also reminded

17  Defendants that its prior Discovery Order requiring the Beverlly deposition to

18  take place no later than August 5, 2008 remained in effect.  Tacori's counsel did

19  not receive that Order until after 2:30 p.m.[5]   (Kroll Decl. ¶ 18 and August 7

20  Order, p. 1 attached as Ex. B to Kroll Decl.).

### 6.   Attempted Deposition On August 8, 2008

22  Immediately upon receipt of the Court's Order denying Defendants' *ex*

23  *parte* applications, Tacori procured an interpreter and a court reporter in order to

24  take the Rule 30(b)(6) deposition of Beverlly on August 8 at 1:30 p.m.  (Kroll

---

[5]  On August 7, 2008, the Court also issued orders denying Tacori's *ex parte* application, explaining that the issues raised by Tacori could not be determined on an *ex parte* basis, and allowing Tacori to bring a motion on those issues after the discovery cutoff.  Tacori's counsel did not receive that Order until almost 4:00 p.m. (Kroll Decl. ¶ 19 and Ex. C).

9

1   Decl. ¶ 20; Lauridsen Decl. ¶ 2). Then, at approximately 3:00 p.m., Steven

2   Lauridsen, one of Tacori's attorneys, and Mr. Kroll called Defendants' counsel to

3   confirm that Beverlly, as Defendants had represented, was available on August 8

4   for the renewed deposition. (Kroll Decl. ¶ 21; Lauridsen Decl. ¶ 3). The

5   receptionist stated that Mr. Felahy was unavailable and that Oscar Ramirez, one

6   of Defendants' attorneys, had just gone into a meeting. (Kroll Decl. ¶ 22;

7   Lauridsen Decl. ¶ 4). Mr. Lauridsen asked the receptionist to take a message for

8   Mr. Ramirez regarding this Court's August 7 Order and asking for confirmation

9   that Beverlly would attend the 1:30 p.m. deposition on August 8. Mr. Lauridsen

10   also explained that the message was urgent and suggested that the receptionist put

11   the message in front of Mr. Ramirez so that he could take a break from his

12   meeting to confirm the deposition. (Kroll Decl. ¶ 23; Lauridsen Decl. ¶ 5).

13   Tacori's counsel did not receive a return call from Defendants' counsel.

14   (Lauridsen Decl. ¶ 6).

15       In an abundance of caution, Mr. Lauridsen sent an email to Defendants'

16   counsel at approximately 4:00 p.m. asking them to confirm Beverlly's attendance

17   at the deposition on August 8. (Kroll Decl. ¶ 24; Lauridsen Decl. ¶ 7). In a reply

18   to this email, Mr. Felahy stated that Beverlly "is no longer able to attend a

19   deposition [on August 8, 2008] at 1:30 p.m." (Kroll Decl. ¶ 25 and Ex. D).

20   Tacori subsequently cancelled the court reporter and interpreter. (Kroll Decl. ¶¶

21   26, 36 and Ex. L).

22       **7.**    **Subsequent Attempts To Resolve Dispute**

23       In order to avoid this discovery motion, Mr. Kroll suggested on August 13

24   that the parties resolve their dispute along the following terms: (1) the deposition

25   of Beverlly would resume on August 28, 2008 for four hours; (2) a discovery

26   referee, to be appointed by the Court, would be present at the renewed deposition

27   and that Defendants would pay for the discovery referee; (3) Defendants would

28   reimburse Tacori for the court reporter and interpreter from the aborted August 5,

1    2008 deposition; (4) Defendants would reimburse Tacori for the cancellation fee

2    for the interpreter[6] for the cancelled August 8, 2008 deposition; (5) Defendants

3    would reimburse Tacori for the court reporter and the interpreter for the renewed

4    August 28, 2008 deposition; (6) Defendants would reimburse Tacori $10,200 for

5    the attorneys' fees incurred as a result of the Discovery Order; and (7) all of the

6    forgoing would be stipulated by the parties and submitted with a proposed order

7    for the approval of this Court. (Kroll Decl. ¶ 27). Defendants declined this offer.

8    (Kroll Decl. ¶ 28).

9    **B.**    **Defendants and Their Counsel Have Violated the Discovery**

10   **Order**

11          **1.**    **Defendants and Their Counsel Have Violated The**

12          **Discovery Order by Preventing Tacori from Completing**

13          **Beverly's Deposition On Or Before August 8, 2008**

14   Defendants and their counsel have prevented Tacori from completing

15   Beverly's Rule 30(b)(6) deposition on or before August 8, 2008 in violation of

16   the Discovery Order.  Defendants' insistence on using their own court reporter

17   and interpreter, and refusing to permit the deposition to be taken using Tacori's

18   court reporter and interpreter, was improper, unjustified and contrary to the

19   language of the Discovery Order.

20          Twice before, Tacori attempted to take Beverlly's deposition.  Each time,

21   Tacori was prevented from doing so by the inappropriate behavior of Defendants'

22   counsel.   This Court previously found that Defendants' behavior warranted

23   sanctions and issued the Discovery Order.   The Court ordered, among other

24   things, that "Defendant shall *reimburse* plaintiff the costs of the court reporter

25   and Cantonese interpreter used at the resumed deposition . . .." (Discovery Order,

26   ───────────────

27   [6] The court reporter did not charge Tacori for this cancelled deposition; however,
     the interpreter has a twenty-four hour minimum notice cancellation policy, so

28   Tacori incurred charges for the interpreter's services.

11

CHRISTIE, PARKER & HALE, LLP

1  p. 11 at ¶ 1 (Exhibit A to Kroll Decl.) (emphasis added)).

2      As this Court explained in the August 7 Order, the language of the

3  Discovery Order is clear.  Contrary to Mr. Felahy's assertion, the Discovery

4  Order does not indicate that Defendants were supposed to bring their own

5  reporter and interpreter to the deposition.  Defendants, however, did so anyway

6  without any prior notice to Tacori or its counsel. (Kroll Decl. ¶ 8).  Rather, and

7  consistent with common practice and the Federal Rules of Civil Procedure,[7] the

8  Discovery Order anticipated that Tacori would be responsible for obtaining the

9  court reporter and interpreter and that Defendants would *reimburse* Tacori for

10  those costs.

11      In a normal situation, an innocent misinterpretation of an Order could be

12  easily rectified by a thorough review of the Order.  Unfortunately, Mr. Felahy,

13  even after being informed of the language of the Discovery Order, did not believe

14  his interpretation of the Discovery Order to be incorrect.   The parties did,

15  however, attempt to resolve this matter informally.

16      Mr. Felahy suggested that the deposition could proceed using Tacori's

17  court reporter and interpreter *only if* Tacori reimbursed Mr. Felahy for

18  Defendants' court reporter and interpreter.  Since that proposal would shift the

19  cost of the deposition to Tacori and would be contrary to the intent of the

20  Discovery Order, Mr. Kroll refused. (Kroll Decl. ¶ 13).  Mr. Kroll suggested that

21  the deposition should go forward using Tacori's court reporter and interpreter and

22  that, if Defendants wanted Tacori to pay for the cost of Defendants' court reporter

23  and interpreter, they could seek relief from the Court after the deposition was

24  completed.  This offer was rejected by Mr. Fellahy. (Kroll Decl. ¶ 14)

25      Finally, Mr. Felahy then made the following offer:  he would only agree to

---

[7] Indeed, the Discovery Order is in line with Rule 30(b)(3) of the Federal Rules of Civil Procedure which contemplates that the noticing party will be responsible for arranging and paying for a court reporter.

12

1    proceed with the deposition if either Tacori agreed to use Defendants' reporter
2    and interpreter – thus forcing Tacori to absorb the costs it paid for these services –
3    or Tacori agreed to reimburse Defendants for the costs of their reporter and
4    interpreter.   Since both of these options would have shifted the costs of the
5    deposition from Defendants to Tacori, in direct violation of the Discovery Order,
6    Mr. Kroll rejected this ultimatum.  (Kroll Decl. ¶ 15).

7          After both parties sought *ex parte* relief from this Court, Tacori arranged to
8    have a court reporter and an interpreter available for a fourth attempted deposition
9    on August 8, 2008 – the deadline set forth in the Discovery Order.  Mr. Felahy,
10   however, informed Tacori's counsel that Beverly was no longer available on
11   August 8.  (Kroll Decl. ¶¶ 20-25 and Ex. D).

12         Defendants and their counsel have effectively prevented Tacori from
13   completing (**in its third and fourth attempts!**) Beverlly's deposition on or
14   before August 8, 2008.  Their improper actions are in violation of the Discovery
15   Order and should not be countenanced by the Court.

16                  2.        **Defendants' Justification for Bringing Their Own Court**
17                           **Reporter and Interpreter Are Baseless**

18         In their previously filed *ex parte* papers, Defendants claim that they
19   brought their own court reporter to Beverlly's third deposition session in part
20   because they became "mistrustful of the relationship" between Veritext and
21   Tacori's counsel.   Defendants attempt to support this claim based on the
22   purported fact that Veritext did not immediately provide Defendants with a copy
23   of a deposition transcript from a matter in which Defendant was neither a party
24   nor the deponent.  (Defendants' Application, p. 3).  Defendants, however, are
25   mistaken because (a) Veritext's actions were correct as a matter of law, and (b)
26   Defendants' subsequent actions indicate that they did not have a problem with
27   using the Veritext reporter.

28

a)    <u>**Veritext's Actions Were Correct As a Matter of Law**</u>

Defendants' accusations of biased conduct on behalf of Veritext have no basis because Veritext was complying with its legal obligations as a court reporting service.   Defendants state that they became distrustful of the relationship between Veritext and Mr. Kroll on Thursday, July 31, 2008. (Defendants' Application, p. 3).   At that time, Defendants purport to have tried to obtain a deposition transcript of "a key Plaintiff witness, in a separate but closely related matter involving Plaintiff" and that Veritext did not provide Defendants a copy of the transcript that same day as requested.   (Defendants' Application, p. 3).   Defendants recite several purported "reasons" for Veritext not providing the transcript; however, in truth, it does not matter what discussions were had between Defendants and Veritext.   As a matter of law, Veritext was *prohibited* from complying with Defendants request both under California and federal law because Defendants were demanding to immediately receive a copy of a deposition transcript from a proceeding to which they were not a party.

(1)    <u>**Veritext was Prohibited by California Law from Providing Defendants an Immediate Copy of the Transcript**</u>

It is Tacori's understanding that Defendants were attempting to procure the transcript of a deposition taken in *Tacori Enterprises v. Rego Manufacturing*, 05-CV-2241, which is currently pending before Judge O'Malley in Federal District Court for the Northern District of Ohio.   Neither Beverly nor Pink Diamond is a party to that action (or a related party), and therefore, as a matter of law, neither is permitted immediate access to the depositions in that case.

In their *ex parte* applications, Defendants claimed that Veritext was required to immediately provide the transcript to them pursuant to California

CHRISTIE, PARKER & HALE, LLP

1  Code of Civil Procedure §§ 2025.570(a), (b).[8] (Defendants' Application, pp. 3-

2  4).    Defendants conveniently ignore, however, the time-frame when the

3  deposition officer must comply with such a request.  Specifically, California Code

4  of Civil Procedure § 2025.570(c) clearly states, "*If a protective order is not*

5  *served on the deposition officer within 30 days of the mailing of the notice, the*

6  *deposition officer shall make the copy available to the person requesting the*

7  *copy.*"  (emphasis added).   Veritext could not have provided Defendants an

8  immediate copy of the transcript because of this a thirty day waiting period.

9  Therefore, under California law, Veritext could not have complied with

10  Defendants request for an *immediate* copy of the deposition transcript from a case

11  to which they were not a party.

                             (2)    **Federal Law Does Not Permit Any Third**

13                                     **Party to Obtain a Copy of a Deposition**

14                                     **Transcript**

15  Moreover, the Federal Rules of Civil Procedure further limit who may

16  receive a deposition transcript.  Specifically, Rule 30(f) states that "[w]hen paid

17  reasonable charges, the [deposition] officer must furnish a copy of the transcript

18  or recording to *any party or the deponent*."  Fed. R. Civ. P. 30(f)(3) (emphasis

_____

[8]   California Code of Civil Procedure §§ 2025.570(a) and (b) state:  "(a) . . . unless the court issues an order to the contrary, a copy of the transcript of the deposition testimony made by, or at the direction of, any party, or an audio or video recording of the deposition testimony, if still in the possession of the deposition officer, shall be made available by the deposition officer to any person requesting a copy, on payment of a reasonable charge set by the deposition officer.  (b) If a copy is requested from the deposition officer, the deposition officer shall mail a notice to all parties attending the deposition and to the deponent at the deponent's last known address advising them of all of the following:  (1) The copy is being sought. (2) The name of the person requesting the copy. (3) The right to seek a protective order under Section 2025.420."

CHRISTIE, PARKER & HALE, LLP

1   added).  Since neither Beverlly nor Pink Diamond is a party to the *Rego* case, and

2   because neither was the deponent in question, Veritext was prohibited by the

3   Federal Rules of Civil Procedure from providing either Beverlly or Pink Diamond

4   a copy of the transcript.

5       Veritext properly complied with its legal obligations under both state and

6   federal law.  As such, there are no facts to support any "collusion" between

7   Veritext and Mr. Kroll.

8           b)    **Defendants Prior Actions Belie Their Accusations**

9                   **Against Veritext**

10       Defendants have never raised the issue of Veritext's credibility before the

11   morning of the third Beverlly deposition despite having had ample time to do so.

12   In fact, at no time during these proceedings have Defendants questioned the

13   accuracy of any of the deposition transcripts prepared by Veritext, including the

14   two transcripts prepared for Beverlly's prior aborted depositions.[9]  It was not until

15   Veritext did not comply with Defendants' unreasonable and unlawful demands

16   that Defendants challenged Veritext's credibility.

17       Moreover, even if Defendants did honestly believe that a conflict of interest

18   had arisen such that they could not rely on Veritext[10] to accurately and truthfully

19   transcribe Beverlly's deposition, Defendants failed to provide Tacori or its

20   counsel any notice of this purported conflict before they arrived for Beverlly's

21   deposition.  If Defendants truly believed there was an issue regarding Veritext,

22   they could have contacted Tacori to see whether it would have been possible for

23   Tacori to arrange to use another court reporting service.  Instead, Defendants

---

[9] These prior depositions were taken April 3, 2008 and May 30, 2008.  The parties stipulated that Beverlly would have thirty days to review and sign the deposition transcripts.  Far more than thirty days have passed in each instance without Beverlly disputing the accuracy of those transcripts.

[10] Defendants still have failed to make it clear as to what the purported conflict of interest is regarding Tacori's Cantonese interpreter.

16

1  chose to arrive with their own reporter and interpreter and to disrupt Beverlly's

2  deposition.

3  Moreover, while the parties were attempting to informally resolve this

4  dispute, Mr. Felahy offered that he would proceed with Tacori's court reporter

5  and interpreter if Tacori agreed to reimburse Defendants for the costs of their

6  reporter and interpreter. (Kroll Decl. ¶ 13). Mr. Felahy's offer, which only

7  concerns which party should bear the cost of the reporter and interpreter, runs

8  contrary to Mr. Felahy's assertion that he is concerned with Veritext's ability to

9  fairly transcribe the deposition.

10  Finally, since Defendants raised their concerns regarding Veritext, the third

11  Rule 30(b)(6) deposition of Pink Diamond[11] has been taken using Veritext as the

12  reporter without Defendants raising any objections. (Kroll Decl. ¶ 12).

13  **IV.   DEFENDANTS' CONTENTIONS THAT IT HAS NOT VIOLATED**

14  **THIS COURT'S DISCOVERY ORDER.**

15  **A.   Plaintiff is Engaging in Discovery Gamesmanship In An Effort**

16  **to Gain a Strategic Litigation Advantage and to Cause Beverly**

17  **to Incur Considerable Expense and Inconvenience in Traveling**

18  **from Hong Kong to the United States for Deposition.**

19  Defendants have repeatedly offered to have Beverlly's owner's, Ms.

20  Theresa Lee, deposition taken multiple times over the past year. Unfortunately,

21  Plaintiff is engaging in discovery gamesmanship in an effort to gain a strategic

22  litigation advantage and to cause Beverly to incur considerable expense and

23  inconvenience in traveling from Hong Kong to the United States for deposition.

24  Despite the hardship which attending multiple depositions has posed to Defendant

25  Beverlly, Ms. Theresa Lee has already attended no less than two depositions in

26  _____

[11] Due to Pink Diamond's failure to produce documents and answer questions at

27  its first deposition, Tacori needed a second and then a third deposition to obtain

28  this information. (Kroll Decl., ¶ 33).

17

1   this matter, and is ready, willing and able to appear for another deposition
2   session.

3       The facts leading up to the present discovery issue between the parties
4   began when on July 14, 2008, the Court ordered the following: "Plaintiff's
5   motion to compel defendant's Rule 3(b)(6) motion is granted, and said deposition
6   shall resume for four (4) hours no later than August 8, 2008. (See, Court's Order
7   of July 14, 2008, attached herein to Plaintiff's Motion as "Exhibit A" at page 11,
8   par. 1).  Immediately after receiving the Court's order, Defense attorney Allen
9   Felahy communicated to Plaintiff's attorney Kroll his eagerness to comply with
10   the Court's order and have Ms. Lee appear for deposition.  (See, also Declaration
11   of Allen B. Felahy at par, 3).  Unfortunately, Mr. Kroll immediately began a
12   tactical game regarding Ms. Lee's deposition.

13       For example, on July 15, 2008, Mr. Kroll e-mailed Mr. Felahy the
14   following message, "[b]ased on the Court's order, we need to schedule the
15   renewed 30(b)(6) deposition of Beverlly on or before August 8. *I am only*
16   *available on August 5 or 6 or starting at 1:30 on August 4.* Please let me know
17   what date works best for you and your client." [Emphasis Added], (See, e-mail
18   string between Plaintiff and Defense counsel, at page 6, sent Tuesday, July 15,
19   2008 at 2:24 p.m., attached herein as "Exhibit 1").  (See, also Declaration of Allen
20   B. Felahy, at par, 4).  Therefore, it is undeniable that it was Mr. Kroll, for
21   Plaintiff's own strategic reasons, that substantially delayed the deposition of Ms.
22   Lee to the end of the Court ordered period.

23       It is irrefutable that Defendants and Mr. Felahy made their best efforts to
24   work with the two and a half (2 ½)  day time span which Mr. Kroll had so
25   meagerly offered.  Therefore, within the hour, on July 15, 2008, Mr. Felahy
26   informed Mr. Kroll that out of the three days offered, he could 1) produce the
27   witness on August 4, 2008, if they could start earlier, 2) or if they could stipulate
28   to having three and a half hours of deposition, they could begin at 1:30p.m.  In

18

1    addition, Mr. Felahy asked that Mr. Kroll attempt some sort of compromise and

2    rearrange his schedule: "Mr. Kroll, within the time frame you have listed, I am

3    only available on Monday August 4, at 10:00 a.m.  I suggest that you rearrange

4    your schedule to accommodate our schedule, then we can jointly request that the

5    court modify its order as to the timing of the deposition on Monday at 1:30 p.m.,

6    as my client will have to leave at 5:00 p.m., sharp.  If you are willing to stipulate

7    that the deposition will be concluded at 5:00 p.m., and that the deponent will not

8    be subject to reexamination on another day, then I can make appropriate

9    arrangements."  (See, Exhibit 1, page 5, e-mail from Attorney Felahy to Attorney

10   Kroll, Tuesday, July 15, 2008 at 3:14 p.m.).  (See, also Declaration of Allen B.

11   Felahy, at par, 5).

12        Mr. Kroll then responded with an accusatory e-mail stating that he thought

13   that Mr. Felahy was limiting the deposition to Mr. Felahy's availability when Mr.

14   Kroll was the attorney who had severely limited his availability:  "Since Oscar

15   has defended the other two depositions, I'm not sure why we are limited to your

16   availability."  (See, Exhibit 1, page 5, e-mail from Attorney Kroll to Attorney

17   Felahy, sent Tuesday, July 15, 2008 at 3:22 p.m.). (See, also Declaration of Allen

18   B. Felahy, at par, 6).  Mr. Kroll then stated he would hold the deposition until

19   whenever it ends, and thus attempted to extend the deposition beyond the Court

20   ordered period to a time of Mr. Kroll's whim: "[i]f you are unwilling to pick

21   August 4 (*starting at 1:30 and ending whenever the deposition ends*), August 5

22   or 6, then we will simply notice the deposition for the date of our choosing.

23   Please let me know by tomorrow what your decision is. Thanks. Howard."  (Bold

24   italics added).  (See, also Declaration of Allen B. Felahy, at par, 6).  In finishing

25   his statement, Mr. Kroll essentially told Mr. Felahy that there would be no

26   compromising or conferring and that Defendant must accept a date of Plaintiff's

27   choice.  These actions were unconscionable and in violation of the Court order

28   and Rules of Civil Procedure which require that parties confer regarding

19

1    deposition dates.  It was apparent Mr. Kroll was acting in a manner designed to

2    make it extremely difficult for Defendants to comply with the Court's order.

3        However, Mr. Felahy still did his best to comply with the Court's order. He

4    made Mr. Kroll aware of his unconscionable behavior by stating to Mr. Kroll

5    "[y]ou have set additional conditions and parameters which are not part of the

6    court order.  I am willing to work with you on this, but cannot accede to your

7    every desire or whim as to the setting of the deposition." (See, Exhibit 1, page 4,

8    e-mail from Attorney Felahy to Attorney Kroll, Tuesday, July 15, 2008 at 3:30

9    p.m.).  (See, also Declaration of Allen B. Felahy, at par, 7). Mr. Felahy then

10   stated "As an accommodation, I suggest that the deposition instead begin at 11:30

11   a.m., at your office on August 4th.  That way you can still get the additional time

12   you need and finish up your court hearing." (See, Exhibit 1, page 5, e-mail from

13   Attorney Felahy to Attorney Kroll, Tuesday, July 15, 2008 at 3:30 p.m.).  (See,

14   also Declaration of Allen B. Felahy, at par, 7).

15       Mr. Kroll, however, refused to refrain from further unconscionable

16   conduct, and unilaterally set Defendant's deposition for August 5th: "Allen:

17   August 4 is no longer available since that is the date that we are required to file

18   our oppositions to your motions for summary judgment.  Therefore, we will be

19   noticing the deposition for August 5 at 10:00 at our office." made Plaintiff's

20   counsels' only date of availability August 5th. (See, Exhibit 1, page 3, e-mail from

21   Attorney Kroll to Attorney Felahy, sent Wednesday, July 16, 2008 at 3:34 p.m.).

22   Certainly this was repeated, inappropriate and unprofessional conduct. (See, also

23   Declaration of Allen B. Felahy, at par, 8).

24       Given the difficulties created by Plaintiff's demands, Mr. Felahy attempted

25   twice more to have Plaintiff's counsel search for another date for deposition.  He

26   therefore sent the following e-mail to Mr. Kroll stating: "You cannot unilaterally

27   set her deposition for August 5th without regards to mine or my client's schedule.

28   Your conduct in this regard is not in conformity with the Court's order which

20

1   requires you to confer with me in good faith regarding deposition dates. I cannot
2   see how your need to file oppositions to our motions for summary judgment
3   impacts your ability to take Ms. Lee's deposition on August 4th, beginning at
4   11:30 a.m. Please explain why that is the case. It seems like you are merely
5   trying to pick a fight for the sake of having a fight to show our Magistrate Judge,
6   something which I consider to be yet more improper conduct on your part." (See,
7   Exhibit 1, page 2, e-mail from Attorney Felahy to Attorney Kroll, Wednesday,
8   July 16, 2008 at 3:49 p.m.). (See, also Declaration of Allen B. Felahy, at par, 9).

9       Mr. Kroll then refused to confer. Instead he called it arguing and refused to
10  dialogue by stating: "Allen: I choose not to argue with you by email on this
11  subject. Given the fact that we have not been able to arrive at a mutually
12  agreeable date for Beverly's deposition, and the Court has ordered her to be
13  deposed by August 8 and it is a deposition that I am taking, I have noticed it for
14  August 5." (See, Exhibit 1, page 2, e-mail from Attorney Kroll to Attorney
15  Felahy, sent Wednesday, July 16, 2008 at 3:34 p.m.). (See, also Declaration of
16  Allen B. Felahy, at par, 10). Therefore, Attorney Kroll flatly refused to negotiate
17  and unilaterally set the deposition in an act of gamesmanship.

18      Mr. Felahy thereafter did everything he could to make sure his client would
19  comply with the Court order. "Mr. Kroll, your complete and utter disregard for
20  mine and my client's schedule is entirely unprofessional. I will see if there is any
21  way she can be here on August 5th. If there is not, I will file an application to
22  have her deposition on August 4th and I will seek to have you sanctioned for
23  having me engage in this silly exercise." However, Mr. Felahy did question the
24  credibility of Mr. Kroll suddenly becoming entirely unavailable for August 4th, in
25  the morning or in the evening: "I again ask, so that I may appropriately advise the
26  court if I am forced to file a motion, why is it that you are now so suddenly
27  completely unavailable on August 4th, when it was a date you stated was open,
28  albeit in the afternoon, in an email you sent yesterday? If you refuse to respond, I

21

1   will advise the Court that you failed to meet and confer in good faith and that you

2   had no legitimate reason for refusing the date of August 4th other than a vexatious

3   desire to cause our client and myself to be inconvenienced even more than

4   otherwise required.  Unfortunately, given your prior conduct I am not surprised

5   by this most recent dispute."  (See, Exhibit 1, page 1, e-mail from Attorney

6   Felahy to Attorney Kroll, Wednesday, July 16, 2008 at 4:26 p.m.).  (See, also

7   Declaration of Allen B. Felahy, at par, 11).

8        Mr. Kroll then did not respond as to why he had so suddenly become

9   unavailable on August 4th for deposition.  Instead he stated "Allen: I will be

10  happy to meet and confer with you in person (or, if necessary, by phone) before

11  you file an application to have her deposition on August 4. Howard"  (See,

12  Exhibit 1, page 1, e-mail from Attorney Kroll to Attorney Felahy, sent

13  Wednesday, July 16, 2008 at 4:52 p.m.).  (See, also Declaration of Allen B.

14  Felahy, at par, 12).  It was therefore apparent that Mr. Kroll had no reason to

15  make himself unavailable for deposition on the 4th of August, much less on the

16  afternoon of August 4th.  Hence, Mr. Kroll was indeed engaging in bad faith

17  tactics in setting this deposition.

18        **B.**   **Defendant Complied with the Court Order to Attend a Further**

19             **Deposition, and Plaintiff Refused to Allow the Deposition to Go**

20             **Forward.**

21        Despite this entire dispute fabricated by Mr. Kroll, Mr. Felahy made sure

22  he and Defendant Beverlly were available on August 5, 2008 for deposition.  In

23  the mean time, however, further incidents occurred which made Defendant's

24  counsel even more wary of the upcoming deposition of Theresa Lee and caused

25  Defendant to take additional precautions against Mr. Kroll's unscrupulous tactics.

26  Immediately before Beverlly's deposition was to take place, Defendants' counsel

27  became mistrustful of the relationship between Veritext Court Reporter services

28  (hereinafter "Veritext") and Howard Kroll. Veritext is a court reporter service

1   used by Mr. Kroll's office. Veritext recorded volume 1 and 2 of Ms. Lee's

2   deposition.

3       Specifically, on Thursday, July 31, 2008, counsel for Defendant contacted

4   Veritext to obtain the deposition transcript it had transcribed of a key Plaintiff

5   witness, in a separate but closely related matter involving Plaintiff.   (See,

6   Declaration of Oscar Ramirez, at par. 5; See also, Declaration of Allen Felahy, at

7   par. 16).   Howard Kroll's office had hired Veritext to transcribe that deposition.

8   This deposition transcript had been previously lodged with a federal court in

9   Cleveland, Ohio.   Since Veritext had a copy of that deposition transcript in its

10  possession, Defendant contacted Veritex offering to pay for a certified copy of

11  that transcript.

12      Notwithstanding its obligations, Veritext refused to allow Defendants to

13  acquire/purchase the requested deposition transcript because, as stated by its

14  account manager, LeAnn Apodaca, Veritext had an "internal policy" and a

15  "substantial relationship," with counsel for Plaintiff which required them to deny

16  Defendants access to the transcript. (See, Declaration of Oscar Ramirez, at par. 6;

17  See also, Declaration of Allen Felahy, at par. 17).

18      Veritext did not provide Defendants with any legitimate reason to deny it

19  access to a certified copy of an otherwise publicly available document; nor did

20  Veritext honor its obligations under California Code of Civil Procedure §

21  2025.570 and notify Defendants' counsel that it would seek a protective order or

22  alternatively notice the parties involved in that Defendants sought the transcripts

23  and that Veritext would then wait the appropriate amount of time to release the

24  transcripts. Instead, Veritext point blank told Defendants that it would not turn

25  over copies of the transcripts. Therefore, Veritext's very capability to impartially

26  and to accurately transcribe any future depositions of Defendants was called into

27  question.

28      Because of the obvious mistrust Defendants hold for Veritext and the

23

1   obvious conflicts of interest between Veritext, Plaintiff, and Plaintiff's counsel,

2   Howard Kroll, Defendant had good reason to hire Kusar to transcribe Ms. Lee's

3   deposition and Continental to provide translation services at the deposition. Along

4   with a Kusar court reporter, a Continental interpreter, and Defendant's attorneys

5   Allen B. Felahy and Oscar Ramirez, Ms. Lee showed up at Mr. Kroll's office on

6   Tuesday, August 5, 2008.

7        Upon arriving, Mr. Kroll refused to allow either Defendant's court reporter

8   or interpreter to enter the conference room where Ms. Lee's deposition was to be

9   held.  Mr. Felahy then informed Mr. Kroll that Ms. Lee had traveled from Hong

10  Kong to be there that morning and that the deposition needed to proceed. Mr.

11  Felahy also informed Mr. Kroll that he had secured a court reporter and an

12  interpreter for two reasons: (1) he mistrusted that Veritext could accurately and

13  impartially transcribe Ms. Lee's deposition for the reasons set forth above, and (2)

14  since Defendant was paying for the court reporter and interpreter, there was no

15  reason for Mr. Kroll to cancel the deposition.   As Mr. Felahy gave this

16  explanation, a Veritext account representative listened without refuting any of his

17  claims against her company.  (See, Declaration of Oscar Ramirez, at par. 9; See

18  also, Declaration of Allen Felahy, at par. 20).

19       Despite, Defendant's counsel communicating to Mr. Kroll that Veritext

20  could not be trusted, Mr. Kroll stated that he did not care if Ms. Lee had to fly

21  back to California again, and that he would not proceed with the deposition. Mr.

22  Kroll shouted in a loud voice that he was terminating the deposition. (See,

23  Declaration of Oscar Ramirez, at par. 10; See also, Declaration of Allen Felahy,

24  at par. 21).

25       As a solution, Mr. Felahy then invited Mr. Kroll to conference call this

26  Court for guidance in order to avoid further frivolous expenditure of money and

27  resources. Mr. Kroll refused, stating that he preferred to have this dispute

28  resolved by this Court through written motions. Mr. Felahy remarked: "you (Mr.

24

1    Kroll) don't want to conference call the Court right now because you want to

2    include misstatements about what happened here in your written declarations to

3    the Court." Mr. Kroll then pointed his finger at Mr. Felahy and stated, in an angry

4    tone, "yeah, that's right." Mr. Kroll's response speaks volumes of the kind of

5    underhanded litigation tactics Defendants and their counsel have been forced to

6    deal with. (See, Declaration of Oscar Ramirez, at par. 10; See also, Declaration of

7    Allen Felahy, at par. 21).

8         In a final effort to resolve this dispute, Mr. Felahy remained in Mr. Kroll's

9    conference room. Mr. Felahy stated that he and his client desired that Ms. Lee's

10   deposition proceed and that he believed that a compromise could be reached.

11   Specifically, Mr. Felahy proposed that the deposition proceed with the court

12   reporter and interpreter that Defendant had procured, and that Defendant would

13   reimburse Plaintiff the appearance fee(s) that would be charged by the court

14   reporter and interpreter that Plaintiff had procured. Thus, contrary to Plaintiffs

15   false assertions, Defendant *did not* attempt to shift the cost of the deposition to

16   the Plaintiff.  (See also, Declaration of Allen Felahy at par. 22).

17        *In response to this effort to compromise, Mr. Kroll simply told Mr.*

18   *Felahy that "we are done." Mr. Felahy then asked if he was being kicked out to*

19   *which Mr. Kroll responded: "Yes, I am kicking you out, leave." It should be*

20   *emphasized that contrary to Plaintiff's assertions, Mr. Kroll did not offer to*

21   *proceed with the deposition, stated that Plaintiff would not be available for the*

22   *deposition of Beverlly on August 8, 2008, and did not attempt to reschedule the*

23   *deposition for a date in line with this Court's August 8, 2008 deadline.* (See,

24   Declaration of Oscar Ramirez, at par. 11; See also, Declaration of Allen Felahy,

25   at par. 24).

26        It should be emphasized that contrary to Plaintiff's assertions, Mr. Kroll did

27   not offer to proceed with the deposition, nor did he attempt to reschedule the

28   deposition for a date in line with this Court's August 8, 2008 deadline. (See,

25

1    Declaration of Oscar Ramirez, at par. 11; See also, Declaration of Allen Felahy,

2    at par. 23).

3        **C.**    **In Response to the Incidents of August 5, 2008, Both Parties**

4                **Filed Ex Parte Applications.**

5        On August 5, 2008, Plaintiff filed its ex parte application for monetary and

6    preclusion sanctions, or to compel the deposition of Defendant Beverly Jewellery

7    Company Limited. ***Nowhere in any of Plaintiffs August 5th ex parte application***

8    ***does it ever state that it will make itself available to take the deposition of***

9    ***Beverly on August 8, 2008.***    (See, Notice of Ex Parte, Dkt. 116, and

10   Memorandum of Points and Authorities, Dkt. 117, attached herein as "Exhibit

11   6").

12       In order to prevent further prejudice by Veritext, on August 6, 2008,

13   Defendant Beverly filed its Ex Parte Application to compel the deposition of

14   Theresa Lee on or before Friday, August 8, 2008 using Kusar Court Reporting

15   Services and Not Veritext and for Sanctions. The Court, nonetheless, ruled that a

16   full motion, and not an ex parte application, would have been required to argue

17   that Plaintiff not be allowed the use of Veritext as court reporters for the

18   deposition of Ms. Lee. Given that the parties were already beyond the motion

19   filing cut-off date, Defendants effectively had no mechanism by which to further

20   challenge Plaintiff's use of Veritext in depositions on the <u>Tacori Enterprises v.</u>

21   <u>Beverlly Jewellery Company Limited</u> and <u>Tacori Enterprises v. Pink Diamond</u>

22   matters. Further, the Court ruled that the third deposition of Ms. Lee must take

23   place by August 8, 2008.

24       **D.**    **Plaintiff Refused to Take Beverlly's Deposition on August 8,**

25                **2008.**

26       ***Prior to receiving the Court's order on the afternoon of August 7, 2008,***

27   ***Attorney Kroll had repeatedly stated to Attorney Felahy that he and his client***

28   ***would be unavailable for deposition on August 8, 2008.***    (See Declaration of

26

1    Allen B. Felahy, at par. 25). Plaintiff apparently had already made the decision

2    not to move forward with the deposition of Ms. Lee on August 8, 2008; and

3    Plaintiff's only goal was to engineer a conflict to retrieve monetary and preclusion

4    sanctions on this issue and not to take the deposition of Ms. Lee at all.

5        As evidence of Plaintiff's gamesmanship, Plaintiff's counsel refused to

6    respond to repeated inquiries by defense counsel as to whether or not Plaintiffs

7    counsel was still unavailable on August 8, 2008 for deposition. *Instead of*

8    *promptly responding to Defendant's inquiries, Plaintiff instead delayed until*

9    *the 11th hour, at 4:09 p.m. on August 7, 2008, to inform defense counsel that*

10   *Plaintiff's counsel was now available and that Plaintiff would take Beverly's*

11   *deposition on August 8, 2008.* " I am writing regarding the Court's order issued

12   today in the Tacori v. Beverly matter. We have booked a Veritext court reporter

13   and an interpreter for Beverlly's deposition at our offices at 1:30 p.m. on Friday,

14   August 8. *Please confirm by 5:00 p.m. today* that Beverly will be attending the

15   deposition. *If we do not hear from you by 5:00 p.m. today, we will assume that*

16   *Beverly will not attend the deposition, and we will not have a court reporter or*

17   *interpreter present at that time."* [Emphasis Added]. (See, e-mail from

18   Plaintiff's Attorney Steven Lauridsen to Defendant's attorneys, sent at 4:09 p.m.,

19   Tuesday, August 7, 2008, attached herein as "Exhibit 4", at pages 9-10). (See

20   also, Declaration of Attorney Felahy, at par. 26). *Amazingly, Plaintiff provided*

21   *Defendants only fifty-one minutes to confirm Ms. Lee's availability for that*

22   *precise time and date or Plaintiff would unilaterally cancel the deposition.* This

23   fleeting moment was not nearly enough time for Defense counsel to confirm

24   and/or arrange for Beverly to appear at deposition at precisely 1:30 p.m. the

25   following day; and as such, because of Plaintiff's rigid deadline, Ms. Lee's

26   deposition did not take place on August 8, 2008. (See Declaration of Allen B.

27   Felahy, at par. 26, 27).

28

CHRISTIE, PARKER & HALE, LLP

**E.**   **Plaintiff has Refused to Meet and Confer to Set a Date for Beverly's Third Deposition.**

Within the hour of receiving Mr. Lauridsen's e-mail, on August 7, 2008, in order to provide Plaintiff with the additional deposition of Ms. Lee, Attorney Felahy began a meet and confer with Plaintiff's counsel to set up a date for the deposition of Ms. Lee.  "I had asked Ms. Lee to keep her calendar open for tomorrow in anticipation that you would advise me promptly whether you intended to proceed with her deposition tomorrow.  As I did not hear from you for almost the entire business day, I presumed and thereby advised Ms. Lee that you were not interested in proceeding tomorrow.  In part, I relied on prior communications with Mr. Kroll wherein he advised us that he was not available on August 8th for any deposition and presumed, based on those prior representations, and your delay in contacting me, that the deposition would not be proceeding tomorrow.  Given the foregoing, Ms. Lee is no longer able to attend the deposition tomorrow at 1:30 p.m."  It is therefore apparent that Mr. Felahy was making every effort to have Ms. Lee available for August 8th, and that Mr. Felahy had expected Plaintiffs to advise him promptly as to whether they would be taking the deposition.  However, no answer came until the end of day the day before the deposition was to take place.  By any standards, a fifty-one minute deadline is never sufficient notice for a deponent to attend a deposition. (See, Exhibit 4 at page 9, e-mail from Attorney Felahy to Attorney Kroll, Thursday, August 7, 2008 at 5:11 p.m). (See also, Declaration of Attorney Felahy , at par. 27).

In addition, Defendant's counsel made it clear to Plaintiff that it would be complying with the Court's order, "[w]e will pay for your court reporter and interpreter's fees for this deposition in conformity with the Court's order."  (See, Exhibit 4 at page 9, e-mail from Attorney Felahy to Attorney Kroll, Thursday, August 7, 2008 at 5:11 p.m).  (See also, Declaration of Attorney Felahy, at par.

28

CHRISTIE, PARKER & HALE, LLP

28).  Moreover, given the impasse created by Plaintiff's fifty-one minute deadline, Defense counsel immediately began to offer Defendant Beverlly for deposition at an alternate date.  He stated, "Given the Court's Order that you pursue a formal noticed motion should you wish to continue pursuing this issue, a fact which will invariably require you to meet and confer with us prior to filing any motion, *I suggest that we now meet and confer regarding selecting a mutually agreeable alternative date for Ms. Lee's deposition.* "(See, Exhibit 4 at page 9, e-mail from Attorney Felahy to Attorney Kroll, Thursday, August 7, 2008 at 5:11 p.m). (See also, Declaration of Attorney Felahy at par. 29).   Therefore, Mr. Felahy immediately began to offer to carry out the deposition as ordered by the Court.

Plaintiff, however, was refusing to respond, and Mr. Felahy was still offering Ms. Lee for deposition. Therefore, at 10:00 a.m. the following day, Mr. Felahy asked for a response to his meet and confer and once again offered Ms. Lee for deposition, " Dear Mr. Lauridsen, *I am still awaiting your response to my proposal to meet and confer regarding the selection of an alternate, mutually agreeable date for Ms. Lee's deposition.* As I previously *pointed out, we will comply with Judge Chapman's order and will bear the cost of the court reporter and interpreter* at this deposition and agree that you can hire whomever you wish. I do ask that if you decide to use Veritext, that you inform them that I would like them to provide a court reporter with Live Note capability because I do not trust Veritiext's ability or willingness to accurately, or for that matter ethically, transcribe my client's testimony... As you did not did not respond to my earlier email regarding the scheduling of Ms. Lee's deposition, I ask that you get back to me promptly as the longer you delay, the more difficult it becomes for me to make the necessary arrangements." (See, Exhibit 4 at page 9, e-mail from Attorney Felahy to Attorney Kroll, Friday, August 8, 2008 at 10:07 a.m). (See also, Declaration of Attorney Felahy, at par. 30). Mr. Felahy therefore was continuing to make his client available for deposition and yet Plaintiff was

29

1    refusing to confer at all.

2        Unfortunately, in response to Defense counsel's meet and confer efforts,

3    Plaintiff's counsel point blank told Defense counsel that it was refusing to confer

4    and was going to delay any further discussions.  Attorney Kroll therefore stated

5    that none of Plaintiff's attorneys would meet and confer further on any of these

6    matters until at least August 13, 2008 when the parties were to have their Rule 16

7    conference.  "I am leaving the office now and will not be back in the office until

8    Tuesday morning.  So, I do not have the time nor the desire to argue with you by

9    e-mail on this issue.  Therefore, if you plan on writing me back (or Steven

10   Lauridsen or anyone on my team), please do not expect to receive any written

11   response.  " (See, Exhibit 4 at pages 8, e-mail from Attorney Kroll to Attorney

12   Felahy, Friday, August 8, 2008 at 11:34 a.m).  (See also, Declaration of Attorney

13   Felahy, at par. 31).   Thus, Attorney Kroll again refused to meet and confer,

14   calling it "arguing", and purposefully caused an undue delay in taking Ms. Lee's

15   deposition to fit the purposes of his motion for preclusion sanctions.

16       Moreover, at this time, Attorney Kroll was not even considering taking the

17   deposition of Ms. Lee; instead he was overly concerned with asking for

18   assurances that Ms. Lee would not testify at trial. "Nevertheless, the parties are

19   having our Rule 16 meeting at my office on August 13 at 5:30 pm. After the Rule

20   16 meeting we can meet and confer on the following issues: 1.   Whether and

21   when you will be reimbursing Tacori for the court reporter and interpreter costs

22   for Tuesday and today (and we will provide you with invoices reflecting these

23   expenses); 2. Whether and when you will be reimbursing Tacori for the attorney's

24   fees expended in filing its ex parte application and in drafting an opposition to

25   your ex parte application and; 3. *Whether you would agree to preclude Beverly*

26   *from testifying on issues relating to design and sales. If that is unacceptable,*

27   *please identify what other sanction you believe is appropriate under Rule 37 (b)*

28   *(2) (A).*" (See, Exhibit 4 at pages 8, e-mail from Attorney Kroll to Attorney

                                         30

1    Felahy, Friday, August 8, 2008 at 11:34 a.m). (See also, Declaration of Attorney

2    Felahy , at par. 32). *Therefore, it is apparent, that Plaintiff had no intention of*

3    *taking the deposition of Defendant Beverly, but instead was only seeking to*

4    *preclude her testimony by not taking her deposition and refusing to meet and*

5    *confer in order to accomplish that.*

6    Defendant's counsel responded to Attorney Kroll that Mr. Kroll was

7    preventing a full meet and confer, since any one of Plaintiff's counsel could

8    complete the meet and confer. "I dispute and disbelieve that your entire law firm

9    is unavailable to discuss this issue with me prior to our Rule 16 meeting. I have

10   been attempting to meet and confer with you to resolve this issue for days now.

11   We were prepared to proceed with the deposition yesterday, but were unable to

12   do so because of your firm's unreasonable delay and last minute request for the

13   deposition minutes before the close of business yesterday. I take it from your

14   email that you are now unwilling to reach any resolution on this matter which

15   would allow for Ms. Lee's deposition to proceed.  That is unfortunate and is

16   something you are solely responsible for as we are ready, willing and able to

17   produce her for deposition and desire to enter a dialog regarding setting the date.

18   " (See, Exhibit 4, at pages 6-7, e-mail from Attorney Felahy to Attorney Kroll,

19   Friday, August 8, 2008 at 2:29 p.m). (See also, Declaration of Attorney Felahy, at

20   par. 33).

21   Mr. Felahy emphasized to Plaintiff's counsel that Defendant was ready,

22   willing and able to comply with the Court's orders. Mr. Felahy stated to Plaintiff's

23   counsel,  "I have already stated that we will pay for the court reporter and

24   interpreter's fees.  I want invoices from your court reporter and interpreter

25   remitted directly to my office for payment as I presume that your client has not

26   yet paid these charges.  If your client has already made payment, then please

27   forward me proof of payment." (See, Exhibit 3, at pages 6-7, e-mail from

28   Attorney Felahy to Attorney Kroll, Friday, August 8, 2008 at 2:29 p.m). (See

31

CHRISTIE, PARKER & HALE, LLP

1  also, Declaration of Attorney Felahy, at par. 34).   Therefore, Defendant was

2  always compliant with the Court's orders. Further, Defense counsel requested that

3  Plaintiff's counsel Kroll meet and confer on the issue of whether Plaintiff's

4  counsel would be withdrawing from this case because of its fraudulent conduct.[12]

5  (See, Exhibit 3, at pages 6-7, e-mail from Attorney Felahy to Attorney Kroll,

6  Friday, August 8, 2008 at 2:29 p.m).

7       On August 12, 2008, Attorney Felahy contacted Mr. Kroll and offered to

8  make Ms. Lee available for deposition *the entire week of August 18, 2008*.   "I

9  write regarding the proposed third session of Ms. Lee's deposition.   Please be

10  advised that I have secured Ms. Lee's availability for the entirety of the week of

11  August 18, 2008.   Ms. Lee can be made available at your office for deposition

12  any day of that week.   We will reimburse you for the cost of securing a court

13  reporter and interpreter for this deposition.   Please let me know whether you wish

14  to proceed with her deposition or whether you are willfully refusing to take Ms.

15  Lee's deposition so as to support a meritless and improper motion to compel. I

16  trust that you will take your obligation to meet and confer in good faith and

---

[12] At the Deposition of Haig Tacorian on August 6, 2008, it was revealed that on December 22, 2003, Attorney Kroll had personally signed a copyright registration correction application on behalf of Tacori.   Therein, Attorney Kroll personally and falsely represented to the Copyright Office that Tacori had acquired the right to original work of Anais Designs, Inc., by way of work for hire.  Mr. Tacorian testified that the December 23, 2003 copyright assignment was the first written agreement between Tacori and Anais Designs, Inc.  Therefore, the representations Attorney Kroll made as certified on December 22, 2003 were false.  Further, on August 18, 2005 amended Tacori's copyright registration to state that the Tacori Look was first published November 17, 1999 and not October 10, 2000.   When asked about this in deposition, Mr. Tacorian could not give a single reason as to why after nearly four years, the date of first publication on the copyright registration needed to be corrected.   Instead he merely stated that it was done upon Mr. Kroll's advice.   Mr. Kroll has been identified as a material and substantial witness by Mr. Tacorian and now has a direct conflict of interest with his client due to his prior perjuries.

32

1   seriously. I look forward to your anticipated reply." (See, Exhibit 4, at page 5,
2   email from Attorney Felahy to Attorney Kroll, Tuesday, August 12, 2008 at 10:29
3   p.m). (See also, Declaration of Attorney Felahy, at par. 35). Thus, Defendants
4   demonstrated that they were more than willing to make Defendant Beverlly
5   available for deposition.

6   However, Attorney Kroll continued to stonewall Defendants and stated he
7   would not respond in writing or in a timely manner. Hence, he responded the
8   following day, "Allen: I look forward to discussing this with you, along with all
9   of the other meet and confers, after the Rule 16 conference of counsel. Howard".
10   (See. Exhibit 4, at page 5, email from Attorney Kroll to Attorney Felahy, sent
11   Wednesday, August 13, 2008 at 12:35 a.m.). (See also, Declaration of Attorney
12   Felahy, at par. 36).

13   Attorney Felahy was then forced to request twice that Attorney Kroll
14   respond to him in writing because Attorney Kroll had made several statements in
15   the past that were not in writing and then later made false representations
16   regarding such matters. "Mr. Kroll, As I have previously stated, given our
17   repeated in-person confrontations and your prior filings with the court of what I
18   believe are entirely false declarations attempting to attribute to me things which I
19   never said, or things which never happened, I am no longer willing to meet and
20   confer with you in-person on any issue save for the Rule 16 conference itself,
21   which I hope can be done quickly and without further altercation. If you wish to
22   meet and confer regarding Ms. Lee's deposition, I ask that you do so in writing. I
23   note that this is a relatively easy matter to resolve if you truly wish to work it out.
24   *I have offered to make Ms. Lee available at your convenience and at our*
25   *expense. You simply need to let me know if you wish to take her deposition and*
26   *if so, on what day.* If you have no intention of meeting and conferring in writing
27   to resolve this issue, please let me know now." (See, Exhibit 4, at pages 3-4 e-
28   mails from Attorney Felahy to Attorney Kroll, Wednesday August 13, 2008 at

33

1   7:41 a.m. and 11:07 a.m.) (See also, Declaration of Attorney Felahy, at par. 37).

2   (Emphasis added).

3        Despite the fact that Mr. Felahy *agreed in writing* to meet and confer

4   regarding the deposition in written correspondence, Plaintiff made an excuse as to

5   why it did not wish to do so. "Allen: The local rules require an in-person meeting

6   with respect to discovery disputes.  Your firm has used our failure to conduct an

7   in-person meeting to object to an earlier attempted discovery motion.  We do not

8   plan on letting you make that argument again. " (See, Exhibit 4 at page 4, email

9   from Howard Kroll to Allen Felahy, Wednesday, August 13, 2008).  (See also,

10  Declaration of Attorney Felahy, at par. 38). Plaintiff again was refusing to meet

11  and confer or to memorialize what its true statements were.  Clearly, Defendant

12  was offering to waive its rights to an in-person meet and confer, and Plaintiff had

13  no basis upon which to refuse to meet and confer. Instead Plaintiff was merely

14  refusing to set a date for the deposition of Ms. Lee.

15       Finally, when Plaintiff's counsel knew that Attorney Felahy was in transit

16  to the Rule 16 conference, and in a sham effort to meet and confer with

17  Defendant's counsel, Attorney Kroll e-mailed Attorney Felahy a non-negotiable

18  ultimatum making no less than seven (7) demands upon Defendant.  If Defendant

19  refused any one of these demands, apparently Plaintiff would refuse to go forward

20  with the deposition and instead would pursue its ultimate goal of preventing Ms.

21  Lee's testimony. Therefore, Plaintiff demanded the following:

22  "Allen: I am unavailable for a deposition next week. However, I am willing to

23  take the renewed deposition of Beverly on August 28 at 10:00 am at my office

24  subject to the following conditions:

25  1.     You reimburse us $320 (for the Court Reporter) and $853.75 (for the

26  interpreter) for the noticed deposition on August 5, 2008.   The payment of

27  $1,173.75 is to be received by my office no later than August 20, 2008.

28  2.     You reimburse us $450 for cancellation fee for the interpreter for the

34

1  proposed deposition on August 8, 2008.  The payment of $450 is to be received
2  by my office no later than August 20, 2008.

3  3.      You will reimburse us for the cost of the Court Reporter and the interpreter
4  for the renewed deposition of Beverly on August 28.  The payment is to be
5  received by my office no later than September 17, 2008.

6  4.      You will reimburse us $10,200 for the attorney's fees incurred by Tacori as
7  a result of your failure to comply with the Court Order dated July 14, 2008.  The
8  payment of $10,200 is to be received by my office no later than August 20, 2008.

9  5.      You will pay for the costs of a discovery referee, to be appointed by the
10  Court, to be present at the renewed deposition of Beverly on August 28.

11  6.      The renewed deposition of Beverly on August 28 shall resume for four
12  hours of actual deposition time.

13  7.      All of the foregoing is to be stipulated by the parties and ordered by Judge
14  Chapman.

15  *I realize that you are in route to my office as I type this*.  Therefore, I will be
16  handing you a print-out of this email at our Rule 16 conference of counsel.
17  Please let me know whether you agree to these conditions by tomorrow.  Thanks.
18  Howard" (Emphasis added). (See, Exhibit 3, at page 3, e-mail from Attorney
19  Kroll to Attorney Felahy, Wednesday, August 13, 2008 at 5:05 p.m). (See also,
20  Declaration of Attorney Felahy , at par. 39).  Plaintiff's counsel was therefore
21  attempting to prevent any form of deposition by creating a list of non-negotiable
22  terms.

23         Defendant's counsel stated he would try to procure Ms. Lee's availability
24  for the date in question *and in addition, agreed to almost every single term that*
25  *Plaintiff asked for*:

26         "Mr. Kroll, I will check with Ms. Lee regarding her availability on the
27  28th. Unless I inform you otherwise, presume that the deposition will go forward.

28  1.      Agreed with the caveat that before payment is remitted, I will need a copy

35

1    of the invoice from your court reporter and interpreter.

2    2.      I do not agree as no one from your office informed me in a timely manner

3    that there would be a deposition proceeding on August 8th.  I was only informed

4    of the deposition by Mr. Laurisden after 4:00 p.m., on August 7th, and I promptly

5    replied that given the late notice, Ms. Lee could not be made available on the 8th,

6    but could be made available on another day.  Given these circumstances there was

7    no reason for your firm to incur a fee.  Indeed, all of this could have been avoided

8    had someone from your office simply contacted me earlier in the day.

9    3.      Agreed. We will pay the reporter's and interpreter's fees upon presentation

10   of an invoice from them.  Alternatively, if you wish us to reimburse you, please

11   present a cancelled check as proof of payment of these fees.

12   4.      We do not agree as it was your conduct which caused the deposition of

13   August 5th to be prematurely terminated.

14   5.      We do not agree to stipulate to the appointment of a discovery referee. If

15   you feel that a referee is necessary, you should file a motion to have one

16   appointed. We will oppose such a motion unless your client agrees to bear all of

17   the commensurate costs which will be caused by the presence of a referee.

18   6.      Agreed.

19   7.      Presuming we reach an agreement on the foregoing, I agree that our

20   agreement may be memorialized by way of a stipulation and order.  In light of my

21   comments to your seven points above, please confirm that you still wish to

22   proceed with Ms. Lee's deposition on August 28, 2008.  Allen Felahy." (See,

23   Exhibit 4, at page 2, email from Attorney Felahy to Attorney Kroll, Thursday,

24   August 14, 2008 at 12:14 a.m). (See also, Declaration of Attorney Felahy, at par.

25   40). However, this was still not enough for Plaintiff whose only goal was ot

26   prevent Ms. Lee's testimony.

27          Despite Defendants' overwhelming cooperation, Attorney Kroll stated that

28   he would be filing a Motion to Compel. "Allen:  Since you are unwilling to agree

36

to the conditions for taking the renewed deposition of Beverlly, we do not intend to take the deposition on August 28.  Instead, we will file our motion to compel. You can expect receiving our Joint Stipulation by tomorrow. Howard". (See, Exhibit 3, at page 1 e-mail from Attorney Kroll to Attorney Felahy, Thursday, August 14, 2008 at 4:35 p.m). Apparently filing a motion regarding preclusion sanctions is Plaintiff's ultimate goal, rather than taking the deposition of Theresa Lee since Plaintiff knows that Defendant Beverlly's evidence will exonerate Beverlly and Pink Diamond for copyright and trade infringement.

### F.   Defendants have Reason in Law and In Fact to Believe that Veritext has Breached its Duties Under the Law and Cannot be Trusted.

Defendants have already cited above how Veritext refused to provide Defendants with deposition transcripts; and that said motivation to withhold the transcripts was based upon Veritext's "substantial relationship" with Plaintiffs counsel.  At not point did Veritext state that it would honor its obligations under California Code of Civil Procedure § 2025.570 and notify Defendants' counsel that it would seek a protective order or alternatively notice the parties involved in that Defendants sought the transcripts and that Veritext would then wait the appropriate amount of time to release the transcripts. Instead, Veritext absolutely refused to provide Defendants with deposition transcripts altogether.

Veritext's duties with regards to production of the transcript under California law (at issue since Veritext employs California Court Reporters, operates as a deposition transcription company in California, and is subject to process and compliance with Court rules and procedures as set by this State) are clear.  According to California Code of Civil Procedure § 2025.570, "unless the court issues an order to the contrary, a copy of the transcript of the deposition testimony made by, or at the direction of, any party, or an audio or video recording of the deposition testimony, if still in the possession of the deposition

37

officer, shall be made available by the deposition officer to ***any person requesting a copy***, on payment of a reasonable charge set by the deposition officer." (Emphasis added).    Upon receiving Defendants' request for the deposition transcript, Veritext was not permitted to engage in self help, rather, as the Code clearly states: "(b) If a copy is requested from the deposition officer, the deposition officer shall mail a notice to all parties attending the deposition and to the deponent at the deponent's last known address advising them of all of the following:(1) The copy is being sought. (2) The name of the person requesting the copy. (3) The right to seek a protective order under Section 2025.420."

According California's the Professional Standards of Practice for Certified Shorthand Reporter's (California Code of Regulations, Title 16, Division 24, Article 8, Section 2475), a California Court Reporter shall "[n]ot enter into, arrange, or participate in a relationship that compromises the impartiality of the certified shorthand reporter." Based on the words of Veritext's representative, that it had a "substantial relationship" with Plaintiffs counsel which prevented it from issuing a copy of transcripts to Defendants, it is very clear that Veritext is not an impartial court reporter in this matter, and Defendants therefore had every right to request that an impartial court reporter be used.

However, given the Court's Order of August 7, 2008 and that there was insufficient time to bring a full motion regarding this matter, Plaintiff has not been able to raise the issue of Veritext's impropriety further until now. Therefore, on Tuesday, August 12, 2008, Plaintiff took an additional deposition of Sam Azemoon on the Tacori v. Pink Diamond case using Veritext's court reporting services. This in no way waived Plaintiff's right to raise this issue again, nor did it imply consent to Plaintiff and its court reporter's blatant unethical behavior. Clearly, Plaintiff should not be allowed to use Veritext in its future depositions in this matter.

38

1
2
3
4
5

# V.   TACORI'S CONTENTIONS REGARDING THE REASONS WHY PRECLUSION SANCTIONS ARE APPROPRIATE

## A.   Defendants Actions Warrant Preclusion Sanctions Because Tacori Will Not Have Another Opportunity to Take Beverlly's Deposition

6
7
8
9
10
11
12
13
14
15
16

Defendants unilaterally and improperly terminated Beverlly's deposition and prevented Tacori from completing the deposition by the August 8, 2008 deadline set forth in the Discovery Order.[13] *See Biovail Labs., Inc. v. Anchen Pharms., Inc.*, 233 F.R.D. 648, 653-54 (C.D. Cal. 2006) (stating that Rule 30(d)(4) is the only authority allowing for interruption of a deposition and stating that delaying, disrupting, or ending a deposition suddenly cannot be condoned). Defendants' actions, which have violated the Discovery Order, require a much broader and more severe sanction to be imposed than may otherwise be imposed for failure to cooperate in discovery. *Cf.* Fed. R. Civ. P. 37(b)(2)(A) with Fed. R. Civ. P. 37(a); *United States v. Kahaluu Const. Co.*, 857 F.2d 600, 602 (9th Cir. 1988).

17
18
19
20
21
22
23

Rule 37 of the Federal Rules of Civil Procedure states that when a party fails to obey a discovery order, the court may issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters into evidence."   Fed. R. Civ. P. 37(b)(2)(A)(ii).  Such "[s]anctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established

24
25
26
27
28

[13] It should be noted that Defendants were twice warned that failure to comply with the Discovery Order would lead to further sanctions.  First, paragraph 3 of the Discovery Order warned Defendants that "[f]ailure to comply with this Order may lead to further sanctions." (Discovery Order, p. 11 at ¶3).  Second, the Court advised Defendants in its August 7 Order that the Discovery Order "requiring the Rule 30(b)(6) deposition take place no later than August 8, 2008 remains in effect." (August 7 Order, p. 1).

39

CHRISTIE, PARKER & HALE, LLP

issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001), *cert. denied sub nom*, *McLachlan v. Simon*, 536 U.S. 941 (2002).

By this Motion, Tacori seeks to preclude Beverly from introducing matters into evidence on four topics about which Tacori attempted to examine Beverly at the noticed and court-ordered depositions.  Specifically, those topics are the design, dates of design, sales, and dates of sales of any ring sold by Beverly before 2000 that contained crescents in the side of the shank of the ring.[14] Beverly contends (so far, without any factual support or admissible evidence) that it designed rings with crescents before Tacori designed such rings[15] in the Summer of 1999.[16]  Since Tacori was unable to fully cross-examine Beverly on these claims, Beverly should not be able to testify on those topics at trial (or introduce evidence on those topics).

Given the circumstances surrounding Tacori's attempts to take Beverly's deposition, preclusion sanctions are appropriate here.  Tacori has attempted to take and complete Beverly's deposition for almost four and one-half months; yet, even in the face of the Discovery Order, Defendants' counsel has repeatedly prevented Tacori from doing so.  Now, discovery has closed.  Defendants have therefore effectively precluded Tacori from cross-examining Beverly on its claim that it designed and sold rings with crescents before the Summer of 1999.

[14] These subject matters represent only four of the twenty-two subject matters upon which the 30(b)(6) witness would be deposed. (Kroll Decl. ¶ 31 and Ex. I).

[15] Tacori has copyright registrations on a number of rings that contain crescents on the side of the shank of the ring, as well as a trade dress claim for these rings. Tacori alleges that Beverly has infringed Tacori's copyrights and trade dress rights by selling rings with these crescents.

[16] It is interesting to note that Defendants, in opposing Tacori's Motion for Partial Summary Judgment and in their own Motions for Summary Judgment, failed to submit any declaration of Ms. Lee of Beverly to support Beverly's claims that it designed rings with crescents in 1998 and sold such rings in 1999.

40

Moreover, even if this Court were to extend the discovery period for the sole purpose of allowing Tacori to take Beverly's deposition,[17] there is no indication that Tacori would be able to successfully complete the deposition. Defendants and their counsel have engaged in a pattern of disruptive behavior during the last three attempts to take Beverlly's deposition and misrepresented to Tacori and this Court that Beverly would be available for a fourth attempt on August 8, 2008.   There is strong reason to believe that this behavior would continue during a fifth attempt.  This is particularly true in light of the fact that this Court's previous Discovery Order has not prevented Defendants and their counsel from engaging in this behavior.  Tacori therefore requests that this Court issue an order for preclusion sanctions with respect to Beverly.

**B.**     **Defendants' Actions Are The Type Contemplated As Appropriate For Preclusion Sanctions**

The Ninth Circuit considers three general purposes served by Rule 37(b) sanctions:  (1) preclusion orders ensure that a party will not be able to profit from its own failure to comply with prior discovery orders; (2) such penalties serve as specific deterrents and seek to secure compliance with the particular order at hand; and (3) although the most drastic sanctions may not be imposed as 'mere penalties,' these sanctions allow courts to consider the deterrent effect such orders may have on the instant case and in other litigation, provided that the party on whom the sanctions are imposed is, in some sense, at fault.  *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980).  All three

---

[17] If the Court denies Tacori's request for preclusion sanctions, Tacori requests as an alternative that the Court issue an order (1) extending the discovery period for the sole purpose of allowing Tacori to take Beverly's deposition, (2) ordering Beverlly's attendance at the deposition, (3) requiring Defendants to reimburse Tacori for the costs of the court reporter and Cantonese Interpreter, and (4) ordering a discovery referee to monitor the deposition and resolve discovery disputes and for Defendants to pay for the costs, if any, of the referee.  Such an order compelling the deposition is appropriate under Rule 37.

CHRISTIE, PARKER & HALE, LLP

1  of these purposes are served here.

2         1.    **Defendants Cannot Profit From Their Violation Of The**
3            **Discovery Order**

4        Defendants have prevented Tacori from taking the deposition of Beverlly

5  four times now over a period of almost four and one-half months, and Defendants

6  have done so in direct violation of the Court's previously issued Discovery Order.

7  Because discovery has closed, Tacori cannot re-notice and take Beverlly's

8  deposition.  If Defendants are allowed to use Beverlly's testimony at trial as to the

9  dates of Beverlly's design and sale of rings with crescents before 2000, without

10  Tacori having first been given the opportunity to depose Beverlly on those

11  subjects, then Defendants will be rewarded for their disobedience of the

12  Discovery Order.  Tacori would be necessarily prejudiced because it was

13  prevented from gathering important evidence that would allow it to impeach

14  Beverlly during trial.  A party suffers prejudice if the other party's actions impair

15  the party's ability to go to trial or threaten to interfere with the rightful decision of

16  the case. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

17        Furthermore, Defendants will seek to use evidence from Beverlly (i.e. dates

18  of design and dates of sale) to defend against a claim of infringement of Tacori's

19  copyrights and trade dress rights.  While Tacori is preparing its pre-trial papers

20  (and preparing for trial), Tacori will necessarily be required to specify the

21  numerous challenges it has with Beverlly's credibility and the authenticity of

22  Beverlly's documents on these subjects.  Because Tacori has been unable to take

23  Beverlly's deposition, and because Tacori must reveal before trial why Beverlly's

24  documents are neither authentic or credible, Beverlly will be in a better position

25  to deal with these concerns during trial.  It is unjust for a party to disobey a Court

26  order and gain an advantage as a result of that violation.

27         2.    **Defendants Can Only Be Deterred By Preclusion Sanctions**

28        It is unfortunate that the Court has been put in the place to adjudicate a

42

dispute revolving around facts that occurred when the Court was not present. And indeed, if this were a singular misunderstanding, Tacori very well might not be bringing its motion. Unfortunately, this is not the case. Defendants have engaged in a continuing pattern of discovery abuse, disregard for this Court's local rules and the Federal Rules of Civil Procedure, and a general disregard for this courts' orders.[18] Defendants' behavior includes:

- **Speaking Objections in Past Depositions**

In the Discovery Order, the Court found that "many of defendant's counsel's objections were 'speaking objections,' giving direction to Ms. Lee. (Discovery Order, pp. 2-3). *See also* Discovery Order, p. 4 ("[d]uring the resumed deposition, defendant's counsel again made numerous speaking objections").

- **Impeding or Delaying Examination at Deposition**

The Court found that "throughout the deposition, defendant's counsel objected to almost each and every question." (Discovery Order, p. 2). Defendants' counsel continued their improper actions during the Rule 30(b)(6) depositions of Pink Diamond. For example:

> Q. Well, no pictures from your computer were produced in response to these document requests.
>
> Mr. Ramirez: We'll represent that pictures from his computer can't even be produced.
>
> By Mr. Kroll:
>
> Q. Why is it that pictures from your computer cannot be produced?

---

[18] Indeed, in their *ex parte* papers, Defendants repeatedly refer to court orders as if they are mere suggestions with which Defendant can choose to comply rather than directions the parties are compelled to obey. For instance, in their papers, Defendants stated "Defendant agreed to comply with this Court's order." (Defendants' *Ex Parte* Application, p. 2).

43

1    Mr. Ramirez:  That's not what he said.

2    Mr. Kroll:  That's what you represented.

3    Mr. Ramirez:  That's not what I represented.

4    (Pink Diamond Deposition II taken July 11, 2008 (Ex. J to Kroll Decl.) at 54:23-

5    55:8);

6          •    **Failure to Produce Documents at Deposition**

7          When it noticed Beverlly's deposition, Tacori also issued requests for

8    production.   In its requests, Tacori asks for copies of rings bearing the ring

9    designs at issue — namely, rings with crescents. (Kroll Decl. ¶ Ex. M).  Beverlly

10   testified that it had fully responded to Tacori's Requests at its deposition on April

11   3, 2008.  (Beverlly Depo I (Ex. N to Kroll Decl.) at 45:6-10).  Unfortunately, that

12   turned out not to be the truth.   Although Beverlly produced other items in

13   response to the deposition notice, Beverlly did not produce any such ring.  Yet,

14   Beverlly's counsel admitted at Beverlly's deposition on May 30, 2008 that he had

15   in his possession rings that were responsive to Tacori's document requests but

16   that had not been produced.  Beverlly's attorney's excuse for non-production was

17   simply:  "You never asked for them.  So hence the ring was never shown."

18   (Beverlly Depo. II (Ex. O to Kroll Decl.) at 150:18-152:13).  This statement was

19   untrue as Tacori's counsel had specifically requested production of these items.[19]

20         •    **Continued Speaking Objections Even After This Court's**

21              **Discovery Order**

22         The third Rule 30(b)(6) deposition of Pink Diamond was taken on August

23   12, 2008, almost one month after the Discovery Order.  Yet, counsel for Pink

24

25

26   [19]  At the deposition, Tacori's attorney asked:  "Are there any documents that you
     are providing today in response to that document request."  Beverlly's attorney
27   responded:  "For the record, I have those documents, and I can provide those to
     counsel now."  (Beverlly Depo I, p. 43, lines 8-12).
28

CHRISTIE, PARKER & HALE, LLP

Diamond continued making speaking objections.[20]

- **Delay in Paying Sanctions Ordered by This Court**

On July 14, 2008, this Court issued a Discovery Order directing Defendants and their counsel "to pay plaintiff's attorney's fees in the amount of $4,825.00, *no later than twenty (20) days from the date of the Order*." (Discovery Order, p. 11 at ¶ 2 (Exhibit A to Kroll Decl.)) (emphasis added). Since the Discovery Order was issued on July 14, 2008, the twenty-day deadline lapsed on Sunday, August 3, 2008.[21] Tacori did not receive payment until August 7, 2008 because Defendants waited until August 4, 2008 to mail the funds to Tacori's counsel. (Kroll Decl. ¶ 40 and Ex. P).[22]

Preclusion sanctions are appropriate in the instant case because there is no indication that any form of lesser sanctions will convince Defendants to comply with the Discovery Order and to allow the deposition of Beverlly to occur without further misconduct. Indeed, lesser sanctions have already been imposed (with a warning that further sanctions may be imposed), and Defendants *still* violated this Court's order. As such, more severe sanctions are needed. If monetary sanctions

---

[20] This deposition has not been fully transcribed. In addition, based on areas covered in the deposition, the transcript has been marked, pursuant to the Protective Order, Confidential - Attorney's Eyes Only. It is anticipated that a certified transcript will not be available until after this Joint Stipulation is filed. Therefore, Tacori will submit under seal a copy of this deposition transcript with appropriate citations to the improper speaking objections.

[21] It is unclear whether the deadline to pay was August 1, which was the previous Friday (because of the language "no later than"), or August 4, which was the following Monday (because of Rule 6(a)(3) of the Federal Rules of Civil Procedure).

[22] Tacori, of course, does not claim harm or prejudice from this minor delay in receiving its attorneys' fees. However, when viewed in light of Defendants' other actions, this violation of the Discovery Order – even if it is relatively minor – reveals yet another part of Defendants' pattern of discovery abuses and general disregard for court orders.

45

1   are the only sanctions ordered, Defendants will have effectively been allowed to

2   flout this Court's rules and orders and preclude Defendants from taking

3   Beverly's deposition in exchange for merely paying a fee.

4       C.   **The Preclusion Sanctions Sought Are Moderate, Are Not**

5            **Tantamount to Dismissal, and Do Not Require a Showing of**

6            **Willfulness**

7       Although the harshest sanction of dismissal raises due process concerns

8   and may require, among other things, a showing of willfullness, preclusion

9   sanctions are a lesser penalty that does not raise such concerns. *See Sumitomo*

10  *Marine & Fire Ins. Co.*, 617 F.2d at 1369 (ranking preclusion sanctions and

11  sanctions deeming facts established as both being the third harshest sanctions out

12  of five possible sanctions); *see also Von Brimer v. Whirlpool Corp.*, 536 F.2d

13  838, 843-44 (9th Cir. 1976) (characterizing preclusion sanctions as "lesser

14  penalties" than dismissal). This is true even if the preclusion of evidence in turn

15  leads to dismissal of the case.[23]  *Von Brimer*, 536 F.2d at 843-44.  Tacori is not

16  asking for complete preclusion of Beverly as a witness. Instead, it is only asking

17  that Beverly be precluded from testifying on four basic topics. Tacori is

18  therefore seeking sanctions that are harsher than monetary sanctions, which failed

19  to get Beverly to comply with this Court's orders and cooperate in discovery, but

20

21  _____

22  [23] It is true that preclusion, if it is tantamount to dismissal, raises due process
    concerns and requires a showing that the disobedience was not beyond the
    disobedient party's control. *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1369.

23  The facts show, however, that Defendants' repeated violations of this Courts'
    orders were indeed willful and in bad faith. Thus, even if the sanctions being

24  sought were tantamount to dismissal, they would still be appropriate. Moreover,

25  Tacori is only seeking preclusion on four of twenty-two topics for which Beverly
    was designated to testify during its deposition. If this Court grants Tacori's

26  request for sanctions, Beverly would still be able to testify regarding a variety of

27  topics related to its defenses, such as lack of substantial similarity, damages and

28  laches, and the sanctions would therefore not be tantamount to dismissal.

46

1    that are still not the harshest possible sanctions.    Preclusion sanctions are

2    therefore appropriate for this additional reason.

3         Moreover, even in cases where the Ninth Circuit has required a showing of

4    "'extreme circumstances' . . . where the violation is due to 'willfulness, bad faith,

5    or fault of the party . . .,'" the Ninth Circuit has still held that "[d]isobedient

6    conduct not shown to be outside the litigant's control meets this standard." *Fair*

7    *Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.), *cert. denied*, 537 U.S.

8    1018 (2002) (citations omitted).    Defendants' repeated violations of this Court's

9    Discovery Order were indeed willful[24] and in bad faith.    This is particularly true

10   considering that Defendants base their violations in part on their unreasonable

11   interpretation of the clear language contained in the Discovery Order.

12        **D.    Defendants Have No Justifiable Explanation For Their Failure**

13            **To Comply With The Discovery Order**

14        Other Courts, such as the Second Circuit, have considered the following

15   factors when considering preclusion sanctions:    (1) the party's explanation for its

16   failure to comply with the court's order, (2) the importance of the evidence

17   precluded, (3) prejudice to the party seeking sanctions if the evidence is allowed,

18   and (4) the possibility of a continuance.    *Reilly v. Natwest Markets Group, Inc.*,

19   181 F.3d 253 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000).    While these

20   factors have not been affirmatively adopted by the Ninth Circuit, they may still

21   provide some guidance in this case, and all of these factors are also met here.

22        First, Defendants have no justifiable explanation for their failure to comply

23   with the Discovery Order.    The language of the Order is clear, and the ultimatum

24   offered by Mr. Felahy would have improperly shifted the costs of the deposition

25   [24] Tacori submits, in the alternative, that willfulness is not required here. Where a
26   party failed to appear for deposition, there is no requirement that failure to appear
     be willful before sanctions may be imposed. *Lew v. Kona Hospital*, 754 F.2d
27   1420, 1426 (9th Cir. 1985). By its conduct, Beverly effectively failed to appear
28   for its deposition on or before August 8, 2008.

47

back onto Tacori in direct contradiction of the Court's prior Discovery Order. Moreover, the Court reminded Defendants when it denied their *ex parte* application on August 7 that they were still under an obligation to comply with the Discovery Order and produce Beverly for deposition by August 8, 2008. Defendants, however, refused to do so.

Second, as discussed above, by depriving Tacori of the right to take Beverlly's deposition, Defendants have severely prejudiced Tacori.

Finally, a continuance in these cases is not feasible. The trial in *Tacori v. Beverlly* is scheduled for October 21, 2008. The trial in *Tacori v. Pink Diamond* is scheduled for November 11, 2008. Additionally, Tacori also has several other trials scheduled in the months following the *Tacori v. Beverlly* trial: *Tacori v. Rego Manufacturing*, 05-CV-2241 (N.D. Ohio) on February 9, 2009 and *Tacori v. EMMI*, 08-552-DSF-(VBx) in December 2009. (Kroll Decl. ¶ 32). In these cases, Beverly is a supplier of infringing products to the defendant. Thus, continuing either the *Tacori v. Beverlly* or the *Tacori v. Pink Diamond* cases would have a cascading effect on all of these other cases and would potentially increase the prejudice to Tacori because Tacori would have less time to adequately prepare for these cases. Tacori is entitled to a quick and timely resolution of its copyright and trade dress infringement action against Beverlly.

CHRISTIE, PARKER & HALE, LLP

**VI.   PRECLUSION SANCTIONS ARE ENTIRELY INAPPROPRIATE IN THIS CASE BECAUSE PLAINTIFF HAS NOT BEEN DEPRIVED OF ANY DISCOVERY BY DEFENDANTS AND DEFENDANT BEVERLLY HAS MADE EVERY EFFORT POSSIBLE TO PROVIDE PLAINTIFF WITH A THIRD DEPOSITION OF BEVERLY**

   **A.   Granting Plaintiffs Motion Would be Unjust and Therefore the Court Should Use its Discretion to Not Enter Precluding Sanctions**

Federal Rule of Civil Procedure Rule 30(b) states that sanctions may be issued "If a party or a party's officer, director, or managing agent- or a witness designated under Rule 30(b)(6) or 31(a)(4)- fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include... (ii) prohibiting the disobedient party form supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  The sanctions therefore must be just.  Further the choice in what type of sanctions should be imposed is left up to the discretion of the judge in the matter. (See, United States of America v. Sumitomo Marine & Fire Insurance Company, Ltd., 617 F.2d 1365, 1369. (9th Cir. 1980)).  Given that Defendant Beverly has made several efforts to have Plaintiff take the third deposition of Beverlly, and that Plaintiff is the party frustrating the taking of this deposition to merely attain precluding sanctions, to rule in Plaintiffs favor would be unjust. Therefore, the Court should use its Discretion to refuse Plaintiff's Motion.

   **B.   Plaintiffs Request for Sanctions Does not Bear A Reasonable Relationship to the Subject of Discovery Because Defendant Beverly has Already Provided the Requested Information.**

According to case law, "[s]anctions may be warranted under Federal Rule

49

1    of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the

2    established issue bears a reasonable relationship to the subject of discovery that

3    was frustrated by sanctionable conduct." (See, Navellier v. Sletten, 262 F.3d 923,

4    947 (9th Cir. 2001), *cert. denied sub nom*).

5        Here, this is not the case.  Plaintiff is presently attempting to prevent

6    Defendant from introducing evidence relating to Beverlly's designs, dates of

7    design, sales and dates of sales of any ring containing crescents on the side of the

8    shank, that was purportedly designed or sold by Beverlly before 2000.  However,

9    Beverlly has already provided this information in written response and at

10   deposition and therefore should not be precluded from offering this evidence at

11   trial.  At the time that Defendant Beverlly responded to Plaintiff's initial set of

12   discovery, it provided drawings of its rings with crescents and invoices showing it

13   sold its rings with crescents to Tacori and other entities at dates which pre-date

14   Tacori's alleged first sales of its rings with crescents. (See, Beverlly's Responses

15   to Request for Production of Documents, attached herein as Exhibit 5). Further,

16   Plaintiff has already deposed Defendant on these issues as can be demonstrated

17   by its citation to various deposition transcripts which it used in its own Motion for

18   Partial Summary Judgment. (See, Dkt. 60 and specifically Dkt. 60-5 and Dkt. 60-

19   6 wherein Plaintiff cites to the deposition transcripts of Beverlly).

20       Being that Plaintiff is now asking for precluding sanctions for discovery it

21   has already received, there is no reasonable relationship between its request for

22   precluding sanctions and the lack of disclosure of any item that has been

23   frustrated by Defendant. Therefore, Plaintiff should not be granted precluding

24   sanctions.

25   **C.     Defendant's Actions are Not the Type Contemplated as**
26   **Appropriate For Preclusion Sanctions.**

27       While the Ninth Circuit does consider three general purposes in allowing

28   preclusion sanctions, such purposes would be inappropriate in this case. Case law

50

1  states that the court may consider (1) that the order would ensure that the party

2  would not be able to profit from its failure to comply with prior discovery orders,

3  (2) that the penalties would serve as specific to secure compliance with a

4  particular order, and (3) that, although the most drastic measures may not be

5  imposed as "mere penalties", the courts are free to consider the general deterrent

6  effect on orders in the instant case or in other litigation, provide the party is at

7  fault. (See, United States of America v. Sumitomo Marine & Fire Insurance

8  Company, Ltd., 617 F.2d 1365, 1369. (9th Cir. 1980)).

9  Here, preclusion sanctions could not act as a specific deterrent to prevent

10 profit from discovery abuse.  Defendant is not preventing Plaintiff from taking

11 Beverlly's deposition to create an advantage.  Beverlly was provided only one day

12 out of twenty in which to have its deposition taken due to Mr. Kroll's

13 gamesmanship.  Beverlly and her counsel appeared on that day and were told to

14 leave Plaintiff's counsel's offices. Thereafter, Defendant's counsel offered to

15 provide Ms. Lee for deposition on the 8th of August and then again on any day

16 during the week of August 18th and additionally offered to make her available for

17 August 28th. Plaintiff has refused each and every one of these offers. Plaintiff is

18 purposefully refusing to take Beverlly's deposition merely to preclude

19 Defendant's evidence.   Therefore, the purpose of preventing Beverlly from

20 profiting would be ill-fitted for this situation.

21 Secondly, preclusion sanctions inherently cannot secure compliance with

22 the particular order since Plaintiff has asked for preclusion sanctions or to have

23 the deposition, in the alternative. Since the sanctions cannot fulfill the purpose of

24 enforcing a deposition, this issue is inherently moot. Assuming arguendo that the

25 Court were to allow both preclusion sanctions and require further deposition, the

26 remaining topics for deposition would be of little consequence and therefore

27 deposition would not even be needed.  Being that Defendant has done its best to

28 comply with the Court's orders, it would be improper to grant preclusion

51

1    sanctions.  Further, it would not act as a general deterrent in this case or other

2    cases, since there are no other outstanding discovery issues at this time between

3    the parties.

4         Plaintiff has argued that preclusion sanctions would act as a deterrent as to

5    Defense counsel's behavior in various incidents which have little or nothing to

6    with the present discovery dispute and are misguided accounts of what occurred.

7    Even in incidents to which Plaintiff cites, Plaintiff misstates Defense counsel's

8    very words.  For instance, Plaintiff claims that defense counsel was improper by

9    stating that he did not say something which Plaintiff's counsel claimed he said.

10   By merely looking at the transcript, one can see that there was a difference in

11   what Attorney Ramirez stated, "his computer", versus what Attorney Kroll says

12   he stated, "your computer", referring to Mr. Ramirez's computer. (See, Pink

13   Diamond Deposition II taken July 11, 2008 (Ex. J to Kroll Decl.) at 54:23-55:8)

14        Further, Plaintiff continues to complain that Defendant has not produced

15   rings, when Plaintiff has never requested to see the rings when they were brought

16   to Plaintiff, and Plaintiff has further failed to provide adequate notice to provide

17   the rings at any other time. [It should be noted that in Attorney Kroll's August 13,

18   2008 email to Attorney Felahy (in which Kroll exhaustively detailed Plaintiff's

19   demands regarding Beverlly's deposition), Attorney Kroll did not request that Ms.

20   Lee bring the rings in question. (See, Exhibit 3, at page 3, e-mail from Attorney

21   Kroll to Attorney Felahy, Wednesday, August 13, 2008 at 5:05 p.m)].

22        Furthermore, it is irrefutable that Defendant has paid its sanctions ordered

23   by this Court. Therefore, it is clear that Defendant substantially complied with the

24   Court's order regarding monetary sanctions. Since, Defendant has not engaged in

25   any egregious conduct, and Plaintiff has substantially impeded the deposition of

26   Ms. Lee, preclusion sanctions against Defendant would be improper.

27

28

CHRISTIE, PARKER & HALE, LLP

D.   **The Preclusion Sanctions Sought are Not Moderate, and are Tantamount to Dismissal Given That the Evidence at Issue is a Key Part of Defendants' Defense. Therefore Such Sanctions Should Fail Since There is No Willful Violation on the Part of Defendant**

Case law states the following, "[a] district court's use of sanctions in order to achieve these objectives is tempered by the requirements of due process. *For example*, `when it has been established that failure to comply (with court discovery orders) has been due to inability, and not to willfulness, bad faith, or any fault of (the disobedient party),' the harshest sanction of dismissal is improper. (Emphasis added). (See, United States of America v. Sumitomo Marine & Fire Insurance Company, Ltd., 617 F.2d 1365, 1369. (9th Cir. 1980) (hereinafter "Sumitomo"), citing to Societe Internationale Poure Participations Industrielles et Commercielles v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096 (1958)). It must be emphasized that the Sumitomo case does not state that a showing of willfulness is only required in cases of dismissal, but rather uses dismissal as an example where sanctions must be tempered by due process.

In this case, Defendants should be provided with additional due process since the sanctions sought are tantamount to dismissal. Plaintiff seeks to preclude evidence relating to Beverly's designs, dates of design, sales and dates of sales of any ring containing crescents on the side of the shank, that was purportedly designed or sold by Beverlly before 2000.  This, however, is the mainstay of one of Defendant's major defenses in this case.  Defendants have always stated that they wished to defend themselves on the basis that Beverly had created and sold rings with crescents before Plaintiff.  This completely would exonerate Beverlly and Pink Diamond since copying would be impossible to prove. This is one of about only three major arguments which Defendants are making in order to prevail in this case.  Thus, if Plaintiff is successful in precluding this evidence, it

53

1    very well could be tantamount to dismissal and should be tempered.

2        Preclusion sanctions are also cited as some of the harshest sanctions which

3    can be imposed and thus should be tempered for that reason alone. Preclusion

4    sanctions are only less harsh than sanctions for dismissal or default judgment.

5    (See, <u>United States of America v. Sumitomo Marine & Fire Insurance Company,</u>

6    <u>Ltd.</u>, 617 F.2d 1365, 1369. (9th Cir. 1980).   Given that preclusion sanctions are

7    harsh sanctions, they should be tempered on that basis as well.

8        Here, Defendant did not act wilfully in violating a Court Order.  Defendant

9    did not cause the cancellation or refusal to carry on with deposition.  As stated

10   above, Plaintiff is the party which improperly terminated Beverlly's deposition

11   and wasted Beverlly's valuable time and expense in traveling to the United States

12   for deposition yet once again. Indeed, it was Attorney Kroll who told Beverlly

13   and its attorneys "we are done" ... Yes, I am kicking you out, leave." (See,

14   Declaration of Attorneys Ramirez and Felahy). Further, it was Plaintiff's refusal

15   to confirm the deposition of August 8, 2008 until 4:09 p.m. the day before that led

16   to the cancellation (See, Exhibit 4, at pages 9-10). Further, Defendant has offered

17   an entire six days upon which Beverlly could be deposed before the end of the

18   month. (See, Exhibit 3 at pages 2 and 5).  Therefore, since this is not a willful

19   violation and the penalties are harsh, the Court should not issue preclusion

20   sanctions.

21       Plaintiff's further argue law inapplicable to this Circuit in making

22   additional arguments. Plaintiff's reference to 2nd Circuit law is inappropriate,

23   given that our own circuit clearly has applicable law, as cited above. Assuming

24   arguendo, the second circuit analysis could apply, Plaintiff's arguments still fail.

25   Defendants have demonstrated a clear explanation that it was Plaintiff who

26   refused to depose Beverlly; the evidence to be precluded, as stated above, is key

27   to this case, and therefore would cause great prejudice to Defendants if precluded.

28       Although it is unlikely that a continuance could occur in this case, given

                                        54

that Plaintiff could still take Beverlly's deposition and refused to do so, such sanctions should not be issued.

## VII.   TACORI'S CONTENTIONS REGARDING THE REASONS WHY MONETARY SANCTIONS ARE APPROPRIATE

Finally, as a result of these actions, Tacori has incurred reasonable attorneys' fees of $10,452.50 in attending the aborted third deposition of Beverlly, drafting its *ex parte* application and drafting its portion of this Joint Stipulation. (Kroll Decl. ¶ 34; Declaration of Steven E. Lauridsen ¶ 8). Tacori also anticipates that it will incur reasonable attorneys' fees of $2,220 in filing a supplemental memorandum and arguing its motion for sanctions. (Kroll Decl. ¶ 34). Rules 30(d)(2), 37(a)(5) and 37(d)(3) of the Federal Rules of Civil Procedure dictates that the Court may properly issue an order requiring Defendants and/or their counsel to pay to Tacori the sanction of $12,672.50. *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (attorney properly sanctioned for excess costs under 28 U.S.C. § 1927 for instructing witness not to answer questions at deposition). Tacori therefore requests an order directing Defendants and their counsel to pay Tacori $12,672.50.

In addition, Tacori requests that this Court order Defendants to reimburse Tacori $320 for the court reporter and $853.75 for the Cantonese interpreter it hired for the aborted August 5, 2008 deposition of Beverlly as well as $450 for the interpreter hired (and cancelled) for August 8, 2008. (Kroll Decl. ¶¶ 35-36).

## VIII. DEFENDANTS' CONTENTIONS AS TO WHY MONETARY SANCTIONS ARE INAPPROPRIATE IN THIS SITUATION

Mr. Kroll has made material misrepresentations to this Court in the past and benefitted in the form of sanctions. In Attorney Kroll's request for sanctions against Defendants and their counsel (which resulted in this Court's July 14, 2008, Order), Mr. Kroll misrepresented his hourly billing rate in this matter as evidenced by his client's own admission. In his recent request for sanctions, Mr.

55

1   Kroll stated once again that his hourly billing rate was $550.00 per hour without
2   providing a shred of evidence. Based on this misrepresentation, Defendants and
3   their counsel were sanctioned at this hourly rate. However, in a sworn deposition,
4   Mr. Haig Tacorian, owner of Plaintiff company, testified that he was actually
5   being charged a rate of $375.00 per hour by Mr. Kroll (please see Defendant's
6   Request for Judicial Notice previously filed as Dkt. No. 124, specifically, refer to
7   Mr. Tacorian's deposition transcript at page 53, line 3 through page 54, line 7.)
8   (See also, Declaration of Allen Felahy, , at par. 21).  There is no evidence that this
9   rate differs in any way from the rate Mr. Kroll is actually charging his client in
10  this case. Indeed, it is likely, and Defendants aver that this is the actual hourly
11  rate charged by Plaintiff's counsel to his client in this litigation notwithstanding
12  what Defendants assert is a prior misstatement by Mr. Kroll regarding his alleged
13  rate.

14      Defendants have already offered to pay for Plaintiff's court reporter and
15  translator fees. Given that Plaintiff improperly concluded Beverlly's deposition on
16  August 8, refused to take another deposition thereafter and has misstated its
17  billing rates in the past, Defendants should receive no further monetary sanctions

18  **IX.   TACORI'S CONCLUSION**

19      Defendants have repeatedly violated this Court's orders by preventing
20  Tacori from taking Beverlly's deposition.  For that reason as well as those set
21  forth above, Tacori respectfully requests that the Court grant its motion for
22  sanctions and/or to compel and issue an order for:  (a) monetary sanctions and (b)
23  preclusion sanctions or, in the alternative, to compel the deposition of Beverlly.

24  **X.    DEFENDANTS' CONCLUSION**

25      Based on the foregoing, Defendants' request that this Court deny Plaintiff's
26  motion for preclusion and monetary sanctions and, if still necessary, set a date by
27  which Beverlly's third deposition must be taken.

28

56

CHRISTIE, PARKER & HALE, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED: August 25, 2008

CHRISTIE, PARKER & HALE, LLP

By _____
Howard A. Kroll
Danielle M. Criona
Steven E. Lauridsen

Attorneys for Plaintiff,
TACORI ENTERPRISES

DATED: August 25, 2008

FELAHY & ASSOCIATES

By _____
Allen B. Felahy, Esq.
Oscar Ramirez, Esq.

Attorneys for Defendant,
PINK DIAMOND

RG PAS809360.2-*-08/25/08 12:49 PM

57

CHRISTIE, PARKER & HALE, LLP

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2008, pursuant to Federal Rules of Civil Procedure, a true and correct copy of the foregoing document described as JOINT STIPULATION REGARDING PLAINTIFF'S MOTION FOR MONETARY AND PRECLUSION SANCTIONS was served on the parties in this action by E-MAIL & U.S. MAIL addressed as follows:

Allen B. Felahy
Oscar Ramirez
Julia Aparicio-Mercado
FELAHY & ASSOCIATES
One World Trade Center, Suite 2350
Long Beach, California  90831

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Executed on August 26, 2008 at Pasadena, California.

_____
Roxanne Gaines

CHRISTIE, PARKER & HALE, LLP